**CLAUDIA M. QUINTANA**
City Attorney, SBN 178613
**BY:  KATELYN M. KNIGHT**
Deputy City Attorney, SBN 264573
**TIMOTHY R. SMYTH**
Deputy City Attorney, SBN 258661
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA  94590
Tel:     (707) 648-4545
Fax:     (707) 648-4687
Email: katelyn.knight@cityofvallejo.net
Email: timothy.smyth@cityofvallejo.net

*Attorneys for Defendants CITY OF VALLEJO and ZACH JACOBSEN*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| ANNICE EVANS, individually and as Successor in Interest to Decedent ANGEL RAMOS; DANTE RAMOS, in his individual capacity; PHILLIP WILSON-VAUGHN, in his individual capacity; LEANN SANCHEZ, in her individual capacity; DARCEL LEWIS, in his individual capacity; D.W., by and through his Guardian Ad Litem, CARITA WILSON; and ALICIA SADDLER, individually and as Guardian Ad Litem for minor G.W., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF VALLEJO; a municipal corporation; ZACK JACOBSEN, Police Officer for the City of Vallejo; and DOES 1-50, individually and in their official capacities as Police Officers for the City of Vallejo, inclusive, <br><br> Defendants. | Case No: 2:17-cv-01619-TLN-AC <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** <br><br> Date:    May 30, 2019 <br> Time:    2:00 p.m. <br> Crtrm:   2 |

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 30, 2019 at 2:00 p.m. in Courtroom 2 of the above

court, Defendants City of Vallejo and Officer Zach Jacobsen will and hereby do move, jointly

and severally, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary

judgment in their favor as to Plaintiff's complaint.  In the alternative, each Defendant moves for partial summary judgment as to each cause of action against them.

Defendant Officer Jacobsen moves for summary judgment, or in the alternative partial summary judgment, on the grounds that Plaintiff lacks standing, no constitutional violation occurred, Officer Jacobsen is entitled to qualified immunity, and Plaintiff cannot establish the elements of each cause of action asserted.  The City of Vallejo moved for summary judgment on the grounds that there was no constitutional violation, and Plaintiff has failed to identify specific facts or present evidence to support her sole cause of action against the City of Vallejo under *Monell.*

This motion is based on this Notice of Motion and Motion for Summary Judgment, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Katelyn M. Knight, Joni Brown, Andrew Bates, and Jeremy Callinan and Exhibits attached thereto, and on such other written and oral argument as may be presented to the Court.


DATED:  May 2, 2019                          Respectfully submitted,


                                             __/s/ Katelyn M. Knight_____
                                             KATELYN M. KNIGHT
                                             Deputy City Attorney
                                             Attorney for Defendants CITY OF VALLEJO
                                             and ZACH JACOBSEN

# Table of Contents

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ...................................................................................................... 6

      A.    Legal Standard ......................................................................................... 6

      B.    Plaintiff Annice Evans Lacks Standing to Assert a Fourth Amendment Claim Based on Violation of Angel Ramos' Rights ................................................................ 7

      C.    Summary Judgment Should be Granted in Officer Jacobsen's Favor Because no Constitutional Violation Occurred, and Officer Jacobsen is Entitled to Qualified Immunity Under the Circumstances of this Case ........................................................ 8

            i.    No Constitutional Violation Occurred Because Officer Jacobsen's use of Force was Based on an Objectively Reasonable Belief that Angel Ramos Posed an Imminent Threat to DeShon Wilson's Life ............ 8

            ii.   Officer Jacobsen did not Violate Clearly Established Law ........................ 12

      D.    Summary Judgment Should be Granted with Respect to Plaintiff's Fourteenth Amendment Claim Because Officer Jacobsen's Act to Protect DeShon Wilson was not Arbitrary or Conscience Shocking ................................................................ 15

      E.    Summary Judgment Should be Granted with Respect to Plaintiff's State Law Claims ................................................................................................. 16

      F.    Summary Judgment Should be Granted in Favor of the City of Vallejo ................. 17

IV.   CONCLUSION.................................................................................................... 20

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................................................................. 8

*Anderson v. Creighton,* 483 U.S. 635 (1987) ............................................................. 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................... 6

*Austen v. City of Los Angeles*, , 2017 U.S. Dist. LEXIS 57006 at *2 (C.D. Cal. 2017) .............. 19

*Barnes v. City of Pasadena*, 508 Fed. Appx. 663 (9th Cir. 2013) ............................... 10

*Board of the County Comm'rs v. Brown*, 520 U.S. 397 (1997).................................... 18

*Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894 (1978)................................. 1, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................... 6

*City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015)......................... 8, 14

*City of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708 (1998)......................... 15

*Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766 (2017)................... 17

*County of Sacramento v. Lewis*, 118 S. Ct. 1708 (1998)........................................... 15

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ..................................... 18

*Estate of Larsen v. Murr*, 511 F.3d 1255 (10th Cir. 2008) ...................................... 11

*Estate of Serrano v. Trieu*, 2016 U.S. Dist. LEXIS 37227, *19-20 (E.D. Cal. 2016) ................. 11

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528 (9th Cir. 2000) ........................ 6

*Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) ................................................ 13

*Flores v. County of L.A.*, 758 F.3d 1154 (9th Cir. 2014) ......................................... 19

*Fowler v. County of L.A.*, 2010 U.S. Dist. LEXIS 51776, *11 (C.D. Cal. 2010) ........................ 19

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002)..................................... 18

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................... 8, 9

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................... 8

*Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ................................... 7

*Hunter v. Bryant*, 502 U.S. 224 (1991)...................................................................... 6

*In re Joseph F.*,  85 Cal.App.4th  975 (2000) ......................................................... 16

*Keyes v. Washington County Land Use and Transportation*,
    2017 U.S. Dist. LEXIS 127029, *18-19 (D. Or. 2017) ......................................... 19

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)................................................. 8, 12, 13, 14

1   *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062 (9th Cir. 2013)..................................... 15

2   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992) ........................................ 7

3   *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003) .................................................................. 10

4   *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012).................................................... 8

5   *Martinez  v.  County  of Los Angeles*, 47 Cal.App.4th 334 (1996)............................................. 16

6   *Martinez v. City. of Los Angeles*, 2018 U.S. Dist. LEXIS 21875, *11 (C.D. Cal. 2018) ............ 19

7   *McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009)................................................. 20

8   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................................................................. 17

9   *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998)................................. 7

10  *Mullenix v. Luna*, 136 S.Ct. 305 (2015).................................................................................... 13

11  *Nehad v. Zimmerman*, 2017 U.S. Dist. LEXIS 208537 (S.D. Cal. 2017)............................... 11, 12

12  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009)................................................. 1, 6, 8, 9

13  *Petersen v. Lewis City*, 697 Fed. Appx. 490 (9th Cir. 2017) ............................................... 11, 12

14  *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ..................................................................... 15

15  *Reese v. City of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ..................................................... 17

16  *Rodrieguez v. City of L.A.*, 891 F.3d 776, 801 (9th Cir. 2018)...................................................... 17

17  *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017)......................................................... 9

18  *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) ................................................................ 9

19  *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007) ................................................................. 7

20  *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)................................................................. 1, 9

21  *Severi v. County of Kern*, 2017 U.S. Dist. LEXIS 209613, *13 (E.D. Cal. 2017) ...................... 19

22  *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ................................................................. 9

23  *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985)........................................................... 19

24  *T.D.P. v. City of Oakland*, 2019 U.S. Dist. LEXIS 29624, *45 (N.D. Cal. 2019)....................... 15

25  *Tennessee v. Garner,* 471 U.S. 1, 105 S. Ct. 1694 (1985)....................................................... 1, 9

26  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835-36 (9thCir. 1996).......................................... 17

27  *Velarde v. Union City Police Dep't*, 2015 U.S. Dist. LEXIS 151935,

28      *21-22, 2015 WL 6871579 (N.D. Cal. 2015) ......................................................................... 17

    *Waggy v. Spokane County*, 594 F.3d 707, 713-14 (9th Cir. 2010) ............................................. 19

*White v. Pauly*, 137 S.Ct. 548 (2017) ................................................................ 6, 12, 13

*Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717 (1990) ...................................... 7

*Wilkenson v. Torres*, 610 F.3d 546 (9th Cir. 2010) .................................................. 15

*Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008) ................................................ 16


**Statutes**

42 U.S.C. § 1983 ............................................................................................. passim

California Civil Code § 52.1 ....................................................................... 6, 16

California Code of Civil Procedure § 377.30 .................................................... 7

California Code of Civil Procedure § 377.32 .................................................... 7

California Code of Civil Procedure § 377.60 ................................................ 6, 16

California Code of Civil Procedure § 377.61 .................................................. 16

E.D. Cal. Local Rule 260 ................................................................................ 6

Fed. R. Civ. Proc. 56 ...................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

## I.

## INTRODUCTION

This case arises from an officer-involved shooting where Officer Jacobsen perceived an imminent threat to a third party and took quick action to save him.  In the early morning hours of January 23, 2017, officers responded to multiple 911 calls reporting a fight with weapons that broke out at a local residence.  On arrival, Officer Jacobsen looked up at the second floor balcony and saw several people fighting and yelling.  He also saw Angel Ramos in the kitchen immediately off the balcony holding a knife at shoulder level and trying to get to someone while another man held him back.  Officer Jacobsen broadcasted through his police radio that he saw a man with a knife fighting in the kitchen.  Seconds later, Ramos crossed the balcony, jumped on top of Deshon Wilson, and made a rapid stabbing motion.  Officer Jacobsen saw a blade in Ramos' hand and fired four shots in quick succession.  Plaintiff asserts that there was no knife in Angel Ramos' hand at the time Officer Jacobsen opened fire, and brought the present civil rights action against Officer Jacobsen and the City of Vallejo.

Summary judgment should be granted in favor of Officer Jacobsen based on the absence of a constitutional violation and the presence of qualified immunity.  An officer may use deadly force to protect himself or others when he has probable cause to believe that an individual poses a significant threat of death or serious injury.  *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S. Ct. 1694 (1985); *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).  Further, qualified immunity applies where an officer acts based on a reasonable mistake of fact.  *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009); *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894 (1978).  Officer Jacobsen's decision to use deadly force in this case was reasonable based on what he saw and the information known to him at the time of the incident and was not motivated by an intent to harm, taking the facts in the light most favorable to Plaintiff even assuming that there was no knife in Angel Ramos' hand when he jumped on top of DeShon Wilson.  Defendant is also entitled to partial summary judgment on the basis that Plaintiff has not demonstrated standing to bring a survival action.

---

**Case No. 2:17-cv-01619-TLN-AC**                    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Summary judgment should also be granted in favor of Defendant City of Vallejo based on the lack of a requisite constitutional violation, or alternative on the grounds that Plaintiff has failed to identify any specific facts or evidence to support her *Monell* cause of action.  Although Plaintiff alleges that the City of Vallejo has failed to discipline or terminate officers for prior unconstitutional actions and has paid millions of dollars in settlement of cases, she has failed to identify any specific examples, let alone demonstrated that any such actions were unconstitutional under the specific facts presented in each instance.

## II.

## BACKGROUND

This case arises from an incident that took place on January 23, 2017 at 1722 Sacramento Street in Vallejo, California.  (UF #1.)  Around 12:38 a.m., the Vallejo Police Department received multiple 911 calls reporting a large party of individuals fighting and screaming in the area of Sacramento Street and Buckles.  (UF #2.)  One caller stated that there were multiple individuals brawling, fighting with sticks, and men and women screaming.  (UF #3.)  Another caller reported men fighting and yelling and a woman screaming for help.  (UF #4.)  Dispatch issued a priority-one call and broadcasted "415[1] weapons; 415 fight; Sacramento and Buckles; mostly heard only; large party breaking up; sounds like a lot of people outside fighting, men and women, sounds like something being hit with sticks." (UF #5.)  Multiple Vallejo Police Officers responded to the area, including Officer Zach Jacobsen.  (UF #6.)

Officer Jacobsen and Officer Samida were working together at a call for service nearby when they heard the priority-one call and responded to Sacramento and Buckles.  (UF #7.)  As they approached the area, the officers heard yelling and screaming coming from a residence at the corner of Sacramento Street and Nebraska Street.  (UF #8.)  The residence at 1722 Sacramento Street is a two-story house with a small wooden balcony on the second floor at the north side, and a fence around the property.  (UF #9.)  The kitchen door opens directly onto the balcony.  (UF #10.)  The balcony deck was illuminated by an outside light and by light coming from the kitchen.  (UF #11.)

---

[1] A "415" code refers to a disturbance of the peace.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Officers Jacobsen and Samida arrived on the scene a little over two minutes after answering the call from dispatch.  (UF #12.)  As the officers walked up to the house, they saw several individuals on the second story balcony screaming and fighting each other.  (UF #13.)  Officers Jacobsen and Samida announced themselves as police and gave multiple orders to stop fighting and back away.  (UF #14.)  Officer Samida also tried to get their attention with a flashlight, however the individuals on the balcony did not respond.  (UF #15-16.)

Through the open kitchen door leading out to the balcony, Officer Jacobsen saw a man he later identified as Angel Ramos in the kitchen holding a large knife at shoulder level and trying to get to someone out of Officer Jacobsen's line of sight.  (UF #17.)  Ramos appeared to be extremely angry and was being held back by someone.  (UF #18.)  Officer Jacobsen broadcasted that there was a man armed with a knife fighting with a guy upstairs in the house over his police radio.  (UF #19.)  The broadcast occurred at 12:42 a.m. and 34 seconds.  (UF #20.)  The kitchen door subsequently swung shut.  (UF #21.)

While Angel Ramos was in the kitchen with a knife, Officer Samida's attention was focused on DeShon Wilson, who appeared to Samida to be the aggressor.  Both Officer Samida and Officer Jacobsen were still on the ground level looking up at the second story balcony.  (UF #24.)  Officer Samida was standing roughly 10 feet to Officer Jacobsen's right.  (UF #25.)  Officer Samida saw DeShon instigating a fight with someone in the kitchen, yelling and taking a bladed stance with his fists raised to his chest.  (UF #26.)  Because Officer Samida had already given multiple commands, which had been ignored, and he appeared ready to fight someone, Officer Samida fired his Taser at DeShon.  (UF #27.)  Although it appeared that only one of the Taser barbs connected, DeShon fell to the balcony floor.  (UF #28.)

Approximately 10-12 seconds after Officer Jacobsen saw the kitchen door close, the door opened and Officer Jacobsen saw Angel Ramos cross the balcony and get on top of DeShon Wilson.  (UF #29-30.)  Officer Jacobsen saw Angel Ramos' hand clenched in a hammerfirst with the blade of a knife extending from him pinkie as Ramos quickly stabbed downward at DeShon.  (UF #31.)  Perceiving an immediate threat to DeShon Wilson's life, Officer Jacobsen fired four shots in quick succession at Angel Ramos, striking and killing him.  (UF #32.)  The first shot was fired just 14.5 seconds after Officer Samida discharged his Taser.  (UF #33.)  Officer

1   Jacobsen had an unobstructed view of Angel Ramos' upper torso, but was not able to see

2   whether the knife was making contact with DeShon Wilson as the deck partially blocked his line

3   of sight to DeShon Wilson.  (UF #34.)  Officer Jacobsen testified that the blade in Angel Ramos'

4   hand appeared to be shorter than the blade of the knife he was previously holding in the kitchen.

5   (UF #35.)

6          Officer Jeremy Callinan was standing approximately 3-5 feet from Officer Jacobsen at

7   the time of the incident and perceived the same immediate threat.  (UF #36-37.)  Officer Callinan

8   heard Officer Samida's Taser deploy as he approached the house.  (UF #38.)  As he looked up at

9   the balcony, Officer Callinan saw Angel Ramos jump on top of DeShon Wilson, and make quick

10  downward stabbing motions while DeShon Wilson screamed.  (UF #39.)  Officer Callinan did

11  not see the knife blade, but he too believed that Angel Ramos had a knife in his hand based on

12  the motion of his hand and the previous radio broadcast.  (UF #40-41.)  Officer Callinan saw that

13  Angel Ramos had his hand clenched in a hammer fist and was making quick downward stabbing

14  motions.  (UF #42.)  The motion was distinct from a punching motion, which tends to have more

15  forward momentum.  (UF #43.)  Officer Callinan had a Taser in his hand at the time.  (UF #44.)

16  He was in the process of putting his Taser away and pulling out a handgun when he saw Officer

17  Jacobsen fire.  (UF #45.)  Callinan did not fire.  Had Officer Jacobsen not fired his weapon,

18  Officer Callinan would have pulled out his own firearm and shot Ramos to protect DeShon

19  Wilson based on his perception of an immediate threat to DeShon Wilson's life.  (UF #46.)

20         Officer Samida also saw Angel Ramos get on top of DeShon Wilson and make a

21  downward striking motion toward DeShon Wilson, however he could not see Angel Ramos'

22  right hand.  (UF 47-48.)  Officer Samida was in the process of changing Taser cartridges when

23  Officer Jacobsen fired.  (UF #49.)  No other officers personally observed the incident, however

24  audio of the incident was captured on Officer Murphy's body camera.  (UF #50.)

25         Two knives were recovered from the kitchen immediately adjacent to the balcony.  A

26  large chef's knife placed in the sink, and a smaller steak knife on the kitchen floor.  (UF. #51-

27  52.)  Angel Ramos' DNA was found to be on both knives.  (UF #53.)  Plaintiff contends that

28  Angel Ramos did not have a knife in his hand based on the testimony of DeShon Wilson and the

    fact that the knives were found in the kitchen, rather than on the balcony.  At his deposition,

---

**DEFENDANTS' MOTION FOR**
                                                                 **SUMMARY JUDGMENT**

DeShon Wilson testified that Angel Ramos was punching him with both fists and that he never saw a knife in Angel Ramos' hand.  (UF #54.)  However, the kitchen is immediately adjacent to the balcony where DeShon Wilson was located, and two witnesses gave statements confirming that they saw Angel Ramos in the kitchen with a knife raised in his hand shortly before the incident—those statements match what Officer Jacobsen observed.  (UF #10, 17, 22-23.)

Officer Jacobsen's observation was corroborated by the statement given by Darcel Lewis following the incident.  Darcel Lewis told police that Angel Ramos was in the kitchen with a knife in his hand, and that Lewis grabbed Ramos and threw the knife in the sink.  (UF #22.) That observation was also corroborated by the statement given by minor G.W. after the incident. G.W. stated that Angel Ramos had been punching the cabinet while DJ (Darcel) was in the kitchen trying to calm him down.  Ramos grabbed a knife with a red handle from the kitchen drawer and tried to make his way out the kitchen door to the balcony.  Ramos at one point held the knife at shoulder level, while DJ tried to prevent him from going outside with the knife. G.W. stated that Angel Ramos had made his way onto the deck, then he heard gunshots.  (UF #23.)

**To summarize**: at 12:38 a.m., multiple citizens called 911 to report a large fight with weapons.  (UF #2.)  Officers arrived on the scene less than three minutes later.  (UF #12.) Officers announced themselves and gave multiple commands to stop fighting, which were ignored.  (UF #14-16.)  Officer Jacobsen saw Angel Ramos in the kitchen, holding a knife at shoulder level, looking extremely angry and struggling against someone holding him back.  (UF #17-18.)  Officer Jacobsen broadcasted over his police radio that there was a man armed with a knife fighting with a guy upstairs.  (UF #19.)  The kitchen door closed.  (UF #21.)  Officer Samida fired his Taser at DeShon Wilson, who fell to the balcony deck.  (UF #27-28.) Approximately 10-12 seconds later, Officer Jacobsen saw Angel Ramos run from the kitchen, get on top of DeShon Wilson, and stab downward toward him with a knife in his hand.  (UF #30-31.)  Officer Jacobsen perceived an immediate threat to DeShon Wilson's life and fired four shots in quick succession, striking and killing Angel Ramos.  (UF #32.)

On August 3, 2017, Annice Evans and seven other family members filed the present action against the City of Vallejo and Officer Jacobsen asserting wrongful death and

1   survivorship causes of action.  (UF #55)  The complaint was subsequently amended and the

2   seven family members dismissed their claims, leaving Annice Evans as the sole plaintiff in this

3   action.  (UF #56-57.)  The operative complaint asserts causes of action for violation of Angel

4   Ramos' rights under the Fourth Amendment, violation of Annice Evans' familial rights under the

5   Fourteenth Amendment, wrongful death under California Code of Civil Procedure §§ 377.60 and

6   377.6, and violation of the Bane Act under California Civil Code § 52.1 against Officer

7   Jacobsen, and a *Monell* cause of action against the City of Vallejo.  (UF #58.)

**III.**

**ARGUMENT**

**A.      Legal Standard**

11          Summary judgment is appropriate when all probative materials of record, viewed with all

12   inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

13   material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. Proc.

14   56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548 (1986).  A party seeking final

15   determination of some, but not all, claims or defenses presented may move for partial summary

16   judgment.  Fed. R. Civ. Proc. 56(a); E.D. Cal. Local Rule 260.  The moving party bears the

17   initial burden of identifying the evidence that demonstrates the absence of a genuine issue of

18   material fact, or by demonstrating that there is an absence of evidence to support the non-moving

19   party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 25 (1986); *Fairbank v.*

20   *Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-

21   moving party to identify evidence upon which a jury could reasonably find in favor of the non-

22   moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

23          The U.S. Supreme Court has repeatedly stressed the importance of resolving immunity

24   questions at the earliest possible stage in litigation.  *Hunter v. Bryant*, 502 U.S. 224, 227, 112

25   S.Ct. 534 (1991).  Because qualified immunity is an immunity from suit rather than a mere

26   defense to liability, it is effectively lost if a case is erroneously permitted to go to trial.  *White v.*

27   *Pauly*, 137 S.Ct. 548, 551-52 (2017)(quoting *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct.

28   808 (2009)).  At the summary judgment stage, once the Court has determined the relevant facts

and drawn all inferences in favor of the nonmoving party to the extent supportable by the record,

---

**Case No. 2:17-cv-01619-TLN-AC**                               **DEFENDANTS' MOTION FOR**
                                                                 **SUMMARY JUDGMENT**

the reasonableness of an officer's actions presents a pure question of law.  *Scott v. Harris*, 550 U.S. 372, 381 n.8, 127 S.Ct. 1769 (2007).

**B.   Plaintiff Annice Evans Lacks Standing to Assert a Fourth Amendment Claim Based on Violation of Angel Ramos' Rights**

As a threshold issue, Plaintiff lacks standing to bring a 42 U.S.C. § 1983 claim based on violation of Angel Ramos' Fourth Amendment rights.  The right to assert a Fourth Amendment excessive force claim through a survival action is predicated on state law authorizing a survival action.  *Hayes v. County of San Diego*, 736 F.3d 1223, 1228 (9th Cir. 2013).  Plaintiff bears the burden of demonstrating that a survival action is authorized by California law and that she meets the state requirements to bring such an action.  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717 (1990).

California's statutory requirements for standing to bring a survival action are set forth at California Code of Civil Procedure §§ 377.30 and 377.32.  Code of Civil Procedure § 377.30 expressly limits the persons who may commence a lawsuit on claims for relief that survive a decedent to the decedent's personal representative or the decedent's successor-in-interest.  Code of Civil Procedure § 377.32(a) requires an affidavit be filed by the person who seeks to commence a survival action providing certain information to establish that they are in fact a successor-in-interest to the decedent.  Plaintiff alleges that she is the biological mother of Angel Ramos, that his father is deceased, and that he died intestate without children (UF #62), however Plaintiff cannot rely on allegations contained in her complaint to oppose a motion for summary judgment.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992).  In this case, no affidavit was filed prior to commencement of this action.  (UF #63.)  The failure to comply with Section 377.32 precludes Plaintiff from maintaining a survival action under 42 U.S.C. § 1983.  *See Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013)("There is no indication whether Appellant has filed the affidavit necessary under California law to commence a survival action as a decedent's successor in interest, see Cal. Civ. Proc. Code § 377.32, or whether survival claims may now be time-barred if Appellant has failed to do so.

Because it is unclear on the present record whether Appellant has standing to assert survival claims based on her father's constitutional rights, we do not address the district court's further finding of qualified immunity in relation to the alleged Fourth Amendment violations. Accordingly, we remand this issue to the district court for a decision whether Chelsey Hayes has standing to assert survival claims based on alleged violations of her father's rights under the Fourth Amendment.").

**C.**  **Summary Judgment Should be Granted in Officer Jacobsen's Favor Because no Constitutional Violation Occurred, and Officer Jacobsen is Entitled to Qualified Immunity Under the Circumstances of this Case**

Public officials are immune from suits brought under 42 U.S.C. § 1983 in all cases except those where the official's conduct violates a clearly established constitutional or statutory right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Evaluating a motion for judgment based on qualified immunity involves a two prong inquiry into: (1) whether the facts, taken in the light most favorable to the non-moving party, demonstrate that the officials violated a constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S.Ct. 808 (2009). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). A plaintiff must prove both prongs of the inquiry to defeat immunity. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). The Court may address the prongs in either order. *Pearson, supra* at 236.

**i.**  **No Constitutional Violation Occurred Because Officer Jacobsen's use of Force was Based on an Objectively Reasonable Belief that Angel Ramos Posed an Imminent Threat to DeShon Wilson's Life**

Police use of force violates the Fourth Amendment only if it is objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989).

Reasonableness is assessed by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.  In assessing reasonableness, the Court must consider all objective facts and circumstances confronting the officer on the scene.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  The most important factor to be considered by the Court is whether the individual posed an immediate threat to the safety of the officers or others.  *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017).  Other relevant factors may include the severity of the crime at issue, the type and amount of force used, and the amount of time the officer had to determine what force appeared reasonably necessary.  *See* Ninth Circuit Model Jury Instruction 9.25.

Use of deadly force is reasonable, and constitutionally permissible, where an officer has probable cause to believe an individual poses a significant threat of death or serious physical injury to another.  *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S. Ct. 1694 (1985); *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).  In this case, Officer Jacobsen saw Angel Ramos in the kitchen with a knife in his hand, struggling against someone trying to hold him back.  (UF #17-18.)  Around 10-12 seconds later, officer Jacobsen then saw Angel Ramos cross the balcony, get on top of DeShon Wilson with a knife in his hand and rapidly stab downward.  (UF #30-31.)  Officer Jacobsen had an unobstructed view of Angel Ramos from the torso up at the time.  (UF #34.)  Because officers are often required to make split-second judgments under tense, rapidly evolving circumstances, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective."  *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151 (2001).  Based on these circumstances, Officer Jacobsen had probable cause to believe that Angel Ramos posed a significant threat to DeShon Wilson's life.  Officer Jacobsen fired four shots in quick succession to protect DeShon Wilson, and his use of deadly force was reasonable.

Plaintiff's entire argument for liability in this case is based on the issue of whether Angel Ramos had a knife in his hand at the time that Officer Jacobsen opened fire.  Even if Angel Ramos did not have a knife in his hand, however, Officer Jacobsen would nevertheless be entitled to immunity.  It is well established that the protection of qualified immunity applies

where an officer acts based on a reasonable mistake of fact.  *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009); *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894 (1978) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law."); *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003)(holding that a prison guard was entitled to qualified immunity where he shot an inmate who he believed was kicking the head of another inmate during a prison fight, despite testimony by the plaintiff and a witness that the officer shot the wrong person); *see also Barnes v. City of Pasadena*, 508 Fed. Appx. 663, 665 (9th Cir. 2013)("even if an issue of fact existed about the presence of a gun, the determinative issue was whether the officers reasonably believed Barnes had a gun and posed an immediate threat to safety. The record indicated that they did. The enhanced still photos from the patrol car video undisputedly show something in Barnes's hand, and Plaintiffs pointed to no evidence suggesting that the officers did not believe, or should not have believed, it to be a gun.")  In this case, Officer Jacobsen's belief that Angel Ramos had a knife in his hand was reasonable based on what he saw and the information known to him at the time of the incident.

Officer Jacobsen responded to a priority one call reporting a lot of people fighting with weapons.  (UF #5, 7.)  As he approached the residence at issue, Officer Jacobsen saw several individuals on the second story balcony screaming and fighting each other.  (UF #8, 13.) Officers Jacobsen and Samida announced themselves and gave multiple orders to stop fighting and back away, however the individuals ignored these orders and continued to fight.  (UF #14-16.)  Officer Jacobsen saw a man he later identified as Angel Ramos in the kitchen holding a large knife at shoulder level and struggling against someone trying to hold him back.  (UF #17-18.)  Officer Jacobsen broadcasted over his police radio that there was a man armed with a knife fighting with a guy upstairs in the house.  (UF #19.)  Approximately 10-12 seconds later, Angel Ramos ran out of the kitchen, got on top of DeShon Wilson, and began making a rapid downward stabbing motion.  (UF #29-31, 39, 42, 47.)

Significantly, Officer Callinan was standing nearby and perceived the same threat to DeShon Wilson's life.  (UF #36-37.)  Officer Callinan saw Angel Ramos jump on top of DeShon Wilson and make quick downward stabbing motions while DeShon Wilson screamed.  (UF #39.) Although he did not see the knife blade, Officer Callinan believed that Ramos had a knife in his

1   hand based on the rapid downward stabbing motion with his hand in a hammer first.  (UF #40-

2   43.)  Indeed, Officer Callinan was so certain that there was a knife in Angel Ramos' hand that he

3   was in the process of drawing his firearm to shoot Ramos.  (UF #45-46.)

4         The timeframe in which the situation evolved also demonstrates the reasonableness of

5   Officer Jacobsen's use of force.  It has been recognized that it is reasonable for an officer to

6   move quickly where delay would endanger lives, even where that results in mistakes being made.

7   *City & County of San Francisco, California v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).

8   Consistent with this precedent, it has been held that "a reasonable officer need not await the

9   'glint of steel' before taking protective action.  *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260

10   (10th Cir. 2008)(cited by *Watkins v. City of San Jose*, 2017 U.S. Dist. LEXIS 68648, *29-30

11   (N.D. Cal. 2017); *Estate of Serrano v. Trieu*, 2016 U.S. Dist. LEXIS 37227, *19-20 (E.D. Cal.

12   2016)).  Officer Jacobsen saw Angel Ramos in the kitchen with a knife in his hand, and saw him

13   cross the balcony and get on top of DeShon Wilson roughly 10-12 seconds later.  (UF #29-30.)

14   Angel Ramos was making a rapid downward stabbing motion at DeShon Wilson at the time

15   Officer Jacobsen fired.  (UF #29-31, 39, 42, 47.)  Any delay by Officer Jacobsen in firing his

16   weapon under these circumstances might reasonably be expected to have cost DeShon Wilson

17   his life.

18         The case of *Nehad v. Zimmerman*, 2017 U.S. Dist. LEXIS 208537 (S.D. Cal. 2017) is

19   instructive.  Shortly after midnight, an individual called 911 and reported a man threatening him

20   with knife.  The first officer on the scene made contact with an individual meeting the suspect's

21   description.  The suspect was located in a dark alley and began advancing on the officer while

22   holding a shiny metallic object in his hand, which was later discovered to be a pen.  The suspect

23   ignored commands to stop and drop the object and the officer shot and killed the suspect.  The

24   Court held that the officer's use of force was objectively reasonable in light of what he had been

25   told and what he observed, despite the fact that the officer mistakenly believed the suspect had a

26   knife in his hand when he in fact was carrying a pen.  *Id.* at *29.

27         The Court in *Nehad* also referred to the decision in *Petersen v. Lewis City*, 697 Fed.

28   Appx. 490 (9th Cir. 2017).  Although the case is unpublished, the Court found *Petersen* to be

   significant and helpful in light of the factual similarities.  In the *Petersen* case, deputies

---

**DEFENDANTS' MOTION FOR**
                                                                    **SUMMARY JUDGMENT**

responded to a 911 call reporting that a man was trying to break into a mobile home and stabbed the front door with a knife. The responding deputy contacted a man meeting the description of the suspect and told him to show his hands. The suspect had his left hand in his sweatshirt pocket. He did not bring his hand into view but began to pace. The deputy drew his gun and continued to give commands, however the suspect ignored the commands. The suspect took two steps toward the deputy, <u>who fired four times</u>. The District Court granted the deputy qualified immunity. The Ninth Circuit reversed, however the United States Supreme Court vacated the judgment and remanded to the Court of Appeals for further consideration in light of *White v. Pauly*. The Ninth Circuit subsequently issued an opinion that the deputy's actions were reasonable in light of the facts presented, that the suspect ignored the deputy's commands and started to charge toward him and the deputy's knowledge that a person matching his description was in the area and may be armed with the knife. *Id.* at 491.

In both the *Nehad* and *Petersen* cases, the Court found the officers' use of deadly force reasonable in part because the suspects were reported to have been armed with a knife—though the officers never saw a knife and the suspects in both cases turned out to be unarmed. Here, <u>Officer Jacobsen saw Angel Ramos in the kitchen with a knife in his hand *seconds* before he jumped on top of DeShon Wilson.</u> (UF #30.) Officer Jacobsen's testimony that he saw Angel Ramos with a knife in his hand in the kitchen was corroborated by the statements of Darcel Lewis and G.W., his contemporaneous radio broadcast, and by the fact that DNA was present on two knives recovered from the kitchen. (UF #19, 22-23, 51-53.) As such, there is even more support for the reasonableness of Officer Jacobsen's use of force in this case than there was for the officers in *Nehad* and *Petersen.*

### ii. Officer Jacobsen did not Violate Clearly Established Law

Even if the Court is not persuaded that no constitutional violation occurred, Officer Jacobsen is nevertheless entitled to summary judgment on the grounds of qualified immunity because he did not violate clearly established law. "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional

question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).  This generally requires a prior case in which an officer acting under similar circumstances was held to have violated an individual's constitutional rights.  *Felarca v. Birgeneau*, 891 F.3d 809, 822 (9th Cir. 2018)("To meet their burden [of demonstrating that the conduct violated clearly established law], plaintiffs must generally identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."); *see also White v. Pauly*, 137 S.Ct. 548, 552 (2017)(reversing denial of qualified immunity, reiterating that the clearly established rule should not be defined at a high level of generality and stating that the panel "failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)("the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue)(citing *Mullenix v. Luna*, 136 S.Ct. 305 (2015)).

In this case, there is no existing precedent that would have led any reasonable officer to the conclusion that using deadly force against Angel Ramos would violate the Fourth Amendment.  To the contrary, the most recent case on point strongly suggests that use of deadly force would be permissible under the circumstances.

In *Kisela v. Hughes*, 138 S.Ct. 1148 (2018), three officers responded to reports of a woman hacking at a tree with a kitchen knife.  After arriving at the scene, the officers saw Ms. Hughes walk towards another woman (Ms. Chadwick) with a kitchen knife in her hand and stop approximately six feet away from her.  The officers were separated from the two women by a chain link fence.  All three officers drew their guns and gave at least two commands to drop the knife, which were ignored.  Hughes appeared to be calm, but did not acknowledge the officers' presence or drop the knife.  Officer Kisela shot Hughes based on his perception that she posed a significant threat to the life of Chadwick.  The whole interaction lasted less than a minute.  The

**DEFENDANTS' MOTION FOR**
                                                                                    **SUMMARY JUDGMENT**

Supreme Court opined that, "even assuming a Fourth Amendment violation occurred—a proposition that is not at all evident—on these facts Kisela was at least entitled to qualified immunity." *Id.* at 1152.  The Court noted that all three officers reasonably believed Hughes to pose a threat.  Officer Kisela knew that Hughes had been behaving erratically enough to cause a concerned citizen to call 911 and that she had been hacking at a tree with a knife.  Hughes then walked to within a few feet of Chadwick with a knife her hand and ignored at least two commands to drop the knife.  Under those circumstances, the Court found that the case was "far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment." *Id.* at 1153.

Here, Officer Jacobsen responded to reports of a fight with weapons, serious enough to prompt multiple concerned citizens to call 911.  (UF #2.)  On arrival, he saw Angel Ramos with a knife in his hand, struggling against someone trying to hold him back.  (UF #17-18.)  Seconds later, Angel Ramos emerged from the kitchen, jumped on top of DeShon Wilson and made a downward stabbing motion.  (UF #29-31.)  Officer Jacobsen and Officer Callinan both perceived an immediate threat to DeShon Wilson's life.  (UF #32, 41-46.)  In *Kisela,* the Supreme Court found that Officer Kisela did not violate clearly established law when he shot Ms. Hughes where she was standing six feet from another with a knife in her hand, and had ignored at least two commands to drop the knife.  Given that holding, a reasonable officer would not be expected to understand that it would be unlawful to shoot in defense of DeShon Wilson.

Plaintiff is expected to argue that Officer Jacobsen's belief that there was a knife in Angel Ramos' hand was not objectively reasonable, and that Officer Jacobsen was required to be close to one hundred percent certain that a knife was in his hand before using deadly force. There is no clear precedent establishing that level of certainty is required before deadly force may be used.  To the contrary, as noted above, the Supreme Court has recognized that it is reasonable for an officer to make split-second decisions where delay would endanger a human life, and that an officer may not be denied qualified immunity based on a reasonable mistake in hindsight.  *City & County of San Francisco, California v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).

///

**D.     Summary Judgment Should be Granted with Respect to Plaintiff's Fourteenth Amendment Claim Because Officer Jacobsen's Act to Protect DeShon Wilson was not Arbitrary or Conscience Shocking**

The Fourteenth Amendment's substantive due process clause protects against the arbitrary or oppressive exercise of government power. *See City of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 1716 (1998).  Parents may assert substantive due process claims under the Fourteenth Amendment for loss of familiar association if they are deprived of their liberty interest in the companionship and society of their child through official conduct.  *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).

"The standard that a plaintiff must satisfy to establish a due-process violation under the Fourteenth Amendment is higher than the standard for excessive-force claim under the Fourth Amendment."  *T.D.P. v. City of Oakland*, 2019 U.S. Dist. LEXIS 29624, *45 (N.D. Cal. 2019).  Where an alleged Fourth Amendment violation is evaluated under a reasonableness standard, "the Due Process Clause is violated by executive action only when it 'can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708 (1998)(quoting *Collins v. Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061 (1992)); *accord Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

To determine whether a use of force shock the conscience, the Court must first determine whether actual deliberation is practical.  *County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1719 (1998)( "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical"); *Porter v. Osborn*, *supra* at 1137.  If it is not, and "the law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience **if he acts with a purpose to harm unrelated to legitimate law enforcement objectives**." *Porter v. Osborn* at 1140 (emphasis added); *Wilkenson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  If the plaintiff cannot show such an unrelated purpose, then summary judgment is proper.  *See Wilkinson v. Torres*, 610 F.3d at 554.

---

Case No. 2:17-cv-01619-TLN-AC                    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The facts and evidence presented in this case, with all reasonably inferences in the light most favorable to Plaintiff, cannot support a finding that Officer Jacobsen acted with a purpose to harm unrelated to a legitimate law enforcement objective.  Officer Jacobsen was responding to 911 calls reporting a large fight with weapons.  On arriving, Officer Jacobsen perceived an immediate threat to third party DeShon Wilson and fired his gun to protect him.  (UF #32.) There is nothing in the record to suggest that Officer Jacobsen fired for any reason other than because he perceived an immediate threat to DeShon Wilson's life.

**E.**     **Summary Judgment Should be Granted with Respect to Plaintiff's State Law Claims**

Plaintiff asserts causes of action for wrongful death under California Code of Civil Procedure § 377.60 and 377.61, and violation of the Tom Bane Civil Rights Act at California Civil Code § 52.1.  (UF #58.)  Claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth  Amendment  claims. *See   In   re   Joseph   F.*, 85 Cal.App.4th 975, 989 (2000) (citing *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 343 (1996)); *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008). As such, to the extent that the Court finds Officer Jacobsen's use of force was reasonable, Plaintiff's claims under California state law must be dismissed.

In the event that the Court denies summary judgment, Officer Jacobsen seeks partial summary judgment with respect to Plaintiff's cause of action under the Bane Act as Plaintiff has failed to demonstrate specific intent to violate Angel Ramos' rights.  The Bane Act provides a cause of action for the interference with rights secured by the Constitution of laws of the United States by any person who engages in threats, intimidation, or coercion.  Section 52.1 states in relevant part that an action may be instituted where:

> a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.

The "coercion" language in the statute has been a source of great confusion in cases alleging causes of action under both 42 U.S.C. § 1983 and the Bane Act.  In the past, some courts

have held that the conduct giving rise to an excessive force claim cannot support a separate cause of action under the Bane Act absent a separate interference by threat, intimidation, or coercion. *See, e.g., Velarde v. Union City Police Dep't*, 2015 U.S. Dist. LEXIS 151935, *21-22, 2015 WL 6871579 (N.D. Cal. 2015).  However, the Ninth Circuit has recently held that a separate interference need not be shown where the officer had specific intent to violate the individual's rights.  *Reese v. City of Sacramento*, 888 F.3d 1030 (9th Cir. 2018).

In cases where a cause of action is brought under the Bane Act based on alleged excessive force, a plaintiff need not show coercion separately from the coercion inherent in the underlying incident of excessive force, however "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure".  *Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)(quoting *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 801-802 (2017)); *see also Rodrieguez v. City of L.A.*, 891 F.3d 776, 801-02 (9th Cir. 2018).  Here, Officer Jacobsen's use of force was in response to a reasonably perceived, immediate threat to DeShon Wilson's life.  There is no evidence that would support an inference that Officer Jacobsen acted with specific intent to violate Angel Ramos' rights.

**F.      Summary Judgment Should be Granted in Favor of the City of Vallejo**

A constitutional violation is also a necessary perquisite to establish a claim against the City of Vallejo based on *Monell*. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835-36 (9th Cir. 1996).  As such, a determination by the Court that Officer Jacobsen's use of force was reasonable is dispositive of Plaintiff's sole cause of action against the City of Vallejo.  However even if the Court does not find the absence of a constitutional violation, the City of Vallejo is entitled to summary judgment in its favor based on the lack of any evidence to support Plaintiff's *Monell* claim.

A municipality is generally not subject to liability under 42 U.S.C. § 1983 for the alleged unconstitutional acts of an employee.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978).  An exception exists where the constitutional violation was caused by "a policy, practice, or custom of the entity", or was the result of an order by a policy-making officer.

---

1   *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Gibson v. County of Washoe*,

2   290 F.3d 1175, 1186 (9th Cir. 2002).  To prevail on a Section 1983 cause of action under *Monell*,

3   Plaintiff must identify the policy or custom that is alleged to have caused his injury, show that

4   "the municipal action was taken with the requisite degree of culpability and must demonstrate a

5   direct causal link between the municipal action and the deprivation of federal rights."  *Board of*

6   *the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

7           The First Amended Complaint alleges that high-ranking Vallejo Police Department

8   officials knew or reasonably should have known about the repeated unconstitutional use of

9   deadly force by Vallejo officers and that each of them "approved, ratified, condoned,

10  encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of

11  misconduct and/or civil rights violations", bringing about the shooting of Angel Ramos.  It

12  further alleges that officials ratified and encouraged misconduct through a deliberate

13  indifference, reckless and/or conscious disregard of the misconduct of Officer Jacobsen.  The

14  complaint further alleges that the City of Vallejo had notice of "Constitutional defects in their

15  training of VPD police officers, including, but not limited to unlawfully using deadly force to

16  make detentions and/or arrests", that the City failed to discipline, terminate, or refrain from

17  hiring Officer Jacobsen, and that each of these actions demonstrated a deliberate indifference by

18  high-ranking City officials.  (UF #59.)

19          Defendants issued written interrogatories requesting all fact supporting Plaintiff Annice

20  Evans' third cause of action against the City of Vallejo under 42 U.S.C. § 1983 pursuant to

21  *Monell*.  (UF #60.)  Plaintiff has not identified any facts that would support a claim for liability

22  against the City of Vallejo.  Instead, Plaintiff responded with broad conclusory statements to the

23  effect that officers within the police department have killed unarmed individuals, engaged in

24  racial profiling and falsified reports without discipline:

25
26              Notwithstanding the foregoing objections, Vallejo Police
               Department Officers have shot and killed multiple unarmed
               individuals in the years preceding this incident and subsequently.
27             Further, Vallejo Police Officers have falsified police reports; failed
               to document uses of force; and have engaged in racial profiling
28             against multiple African American and Latino citizens. None of the
               involved officers in any of these incidents have been disciplined or

---

Case No. 2:17-cv-01619-TLN-AC                           **DEFENDANTS' MOTION FOR**
                                                        **SUMMARY JUDGMENT**

1
2

terminated for their unconstitutional actions, despite the City
paying out millions of dollars in settlements, which cannot be
justified by claims of fiscal efficiency.

3    (UF #55.).  These broad conclusory assertions are insufficient to support a claim under *Monell*.

4    *See, e.g. Martinez v. City of Los Angeles*, 2018 U.S. Dist. LEXIS 21875, *11 (C.D. Cal. 2018).

5          Plaintiff has identified no prior instances where officers shot and killed unarmed

6    suspects, let alone demonstrated that any such actions were unconstitutional under the specific

7    facts presented in each instance.  Plaintiff has similarly failed to identify prior instances of racial

8    profiling or false reporting.  To assert a cause of action under *Monell*, Plaintiff must establish a

9    pattern of past constitutional violations, similar to the alleged violation at issue.  *Keyes v.*

10   *Washington County Land Use and Transportation*, 2017 U.S. Dist. LEXIS 127029, *18-19 (D.

11   Or. 2017)(citing *Flores v. County of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014)); *Severi v. County*

12   *of Kern*, 2017 U.S. Dist. LEXIS 209613, *13 (E.D. Cal. 2017)(citing *Strauss v. City of Chicago*,

13   760 F.2d 765, 767-768 (7th Cir. 1985)).  To support a claim of lack of discipline, Plaintiff would

14   also logically have to demonstrate that a violation occurred for which discipline was warranted.

15   She has not done so.  Plaintiff also identifies no prior settlements, or facts to support the

16   conclusion that past settlements were based on an the existence of a clear constitutional violation

17   as required.  *See Fowler v. County of L.A.*, 2010 U.S. Dist. LEXIS 51776, *11 (C.D. Cal. 2010).

18

19         "[C]ourts have repeatedly rejected conclusory <u>Monell</u> allegations that lack factual content

20   from which one could plausibly infer <u>Monell</u> liability…[A] plaintiff must allege 'specific facts

21   giving rise to a plausible Monell claim' instead of 'formulaic recitations of the existence of

22   unlawful policies, customs, or habits."  *Martinez v. City of Los Angeles*, 2018 U.S. Dist. LEXIS

23   21875, *11 (C.D. Cal. 2018)(quoting  *Wilson ex rel. Bevard v. City of West Sacramento*, 2014

24   U.S. Dist. LEXIS 56013 at *2 (E.D. Cal. 2014) and  *Austen v. City of Los Angeles*, , 2017 U.S.

25   Dist. LEXIS 57006 at *2 (C.D. Cal. 2017)).  Because Plaintiff has offered no evidence of any

26   City policy, practice or custom, which allegedly caused the asserted constitutional violations, she

27   cannot proceed with a *Monell* claim and Defendant City of Vallejo is entitled to summary

28   judgment.  *See Waggy v. Spokane County*, 594 F.3d 707, 713-14 (9th Cir. 2010) (affirming

---

summary judgment for county where plaintiff failed to provide evidence of any express county policy, practice or custom, or evidence to support an inference of any county policy, practice or custom, and failed to provide evidence indicating what training procedures county employed or what type of constitutionally-mandated training was lacking); *McSherry v. City of Long Beach*, 584 F.3d 1129, 1147 (9th Cir. 2009) (affirming summary judgment for city where, inter alia, plaintiff failed to tender facts other than officers' alleged personal misdeeds).

## IV.

## CONCLUSION

For the reasons discussed herein, Defendants City of Vallejo and Officer Zach Jacobsen respectfully request that the Court grant summary judgment in their favor, or in the alternative partial summary judgment with respect to each of the causes of action stated in Plaintiff's Amended Complaint.


DATED:  May 2, 2019                                    Respectfully submitted,


                                                       __/s/ Katelyn M. Knight_____
                                                       KATELYN M. KNIGHT
                                                       Deputy City Attorney
                                                       Attorney for Defendants CITY OF VALLEJO
                                                       and ZACH JACOBSEN