**CLAUDIA M. QUINTANA**
City Attorney, SBN 178613
**BY: KATELYN M. KNIGHT**
Deputy City Attorney, SBN 264573
**TIMOTHY R. SMYTH**
Deputy City Attorney, SBN 258661
**CITY OF VALLEJO**, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA 94590
Tel:   (707) 648-4545
Fax:   (707) 648-4687
Email: katelyn.knight@cityofvallejo.net
Email: timothy.smyth@cityofvallejo.net

*Attorneys for Defendants CITY OF VALLEJO and ZACH JACOBSEN*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| ANNICE EVANS, individually and as Successor in Interest to Decedent ANGEL RAMOS; DANTE RAMOS, in his individual capacity; PHILLIP WILSON-VAUGHN, in his individual capacity; LEANN SANCHEZ, in her individual capacity; DARCEL LEWIS, in his individual capacity; D.W., by and through his Guardian Ad Litem, CARITA WILSON; and ALICIA SADDLER, individually and as Guardian Ad Litem for minor G.W.,<br><br>          Plaintiffs,<br>vs.<br><br>CITY OF VALLEJO; a municipal corporation; ZACK JACOBSEN, Police Officer for the City of Vallejo; and DOES 1-50, individually and in their official capacities as Police Officers for the City of Vallejo, inclusive,<br><br>          Defendants. | Case No: 2:17-cv-01619-TLN-AC<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date:   May 30, 2019<br>Time:   2:00 p.m.<br>Crtrm:  2 |

Defendants City of Vallejo and Officer Zach Jacobsen submit the following Statement of Undisputed Facts in support of their Motion for Summary Judgment, or in the alternative Partial Summary Judgment:

| **Moving Party's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 1.      This case arises from an incident that took place on January 23, 2017 at 1722 | 1. |

| Case No. 2:17-cv-01619-TLN-AC | **DEFENDANTS' SEPARATE STATEMENT IN SUPPORT OF MSJ** |
|---|---|

| **Moving Party's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Sacramento Street in Vallejo, California. | |
| First Amended Complaint, ¶ 14 (Knight Decl. Ex. A) | |
| 2. Around 12:38 a.m., the Vallejo Police Department received multiple 911 calls reporting a large party of individuals fighting and screaming. | 2. |
| Audio Recording of 911 Calls (Bates Decl., Ex. A) | |
| 3. One of the callers stated that there were multiple individuals brawling, fighting with sticks, and men and women screaming. | 3. |
| Audio Recording of 911 Call (Bates Decl., Ex. A) | |
| 4. One of the callers reported men fighting and yelling and a woman screaming for help. | 4. |
| Audio Recording of 911 Call (Bates Decl., Ex. A) | |
| 5. Dispatch issued a priority one call and broadcasted "415 weapons; 415 fight; Sacramento and Buckles; mostly heard only; large party breaking up; sounds like a lot of people outside fighting, men and women, sounds like something being hit with sticks." | 5. |
| Radio Traffic (Bates Decl., Ex. B); Jacobsen Dep. at 40:6-12 (Knight Decl., Ex. B) | |
| 6. Multiple Vallejo Police officers responded to the area. | 6. |
| CAD Report (Brown Decl., Ex. A) | |
| 7. Officer Jacobsen and Officer Samida were at a call for service nearby when they heard the priority one call and responded to Sacramento and Buckles. | 7. |
| Jacobsen Dep. at 39:15-40:24 (Knight Decl., Ex. B) | |

| **Moving Party's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 8. As they approached 1722 Sacramento Street, the officers heard yelling and screaming coming from coming from a residence at the corner of Sacramento and Nebraska Streets<br><br>Jacobsen Dep. at 48:9-22 (Knight Decl., Ex. B); Samida Dep. at 18:5-20:7 (Knight Decl., Ex. C) | 8. |
| 9. The house at 1722 Sacramento Street is a two-story house with a small wooden balcony on the second floor at the north side, and a fence around the property.<br><br>Jacobsen Dep. at 27:7-28:15 (Knight Decl., Ex. B) | 9. |
| 10. The kitchen door opens directly onto the balcony.<br><br>Jacobsen Dep. at 22:2-7 (Knight Decl., Ex. B) | 10. |
| 11. The balcony deck was illuminated by an outside light and by light from the adjacent kitchen.<br><br>Jacobsen Dep. at 53:1-20 (Knight Decl., Ex. B); Samida Dep. at 22:17-23:10 (Knight Decl., Ex. C) | 11. |
| 12. Officers Jacobsen and Samida arrived on the scene a little over two minutes after answering the call from dispatch.<br><br>Computer Aided Dispatch Report (Brown Decl., Ex. A); Jacobsen Dep. at 46:20-47:4) (Knight Decl., Ex. B) | 12. |
| 13. As Officers Jacobsen and Samida walked up to the house, they saw several individuals on the second story balcony screaming and fighting each other.<br><br>Jacobsen Dep. at 51:9-24 (Knight Decl., Ex. B); Samida Dep. at 19:17-20:7 (Knight Decl., Ex. C) | 13. |
| 14. Officers Jacobsen and Samida announced themselves as police and gave multiple commands to stop fighting and back away. | 15. |

Case No. 2:17-cv-01619-TLN-AC    **DEFENDANTS' SEPARATE STATEMENT IN SUPPORT OF MSJ**

- 3 -

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Jacobsen Dep. at 59:17-60:3 (Knight Decl., Ex. B); Samida Dep. at 26:10-19 (Knight Decl., Ex. C) | |
| 15.     Officer Samida used his flashlight to try to gain the attention of the individuals on the balcony.<br><br>Samida Dep. at 26:10-19 (Knight Decl., Ex. C) | |
| 16.     The individuals on the balcony did not respond to the officers' commands.<br><br>Samida Dep. at 26:10-24 (Knight Decl., Ex. C) | 16. |
| 17.     Through the open kitchen door leading out to the balcony, Officer Jacobsen saw Angel Ramos in the kitchen holding a large knife at shoulder level and trying to get to someone out of Officer Jacobsen's line of sight.<br><br>Jacobsen Dep. at 21:10-22:24 (Knight Decl., Ex. B) | 17. |
| 18.     Ramos appeared to be extremely angry and was being held back by someone.<br><br>Jacobsen Dep. at 22:20-24 (Knight Decl., Ex. B) | 18. |
| 19.     Officer Jacobsen broadcasted that there was a man armed with a knife fighting with a guy upstairs in the house over his police radio.<br><br>Radio Traffic at 2:28-2:31 (Bates Decl., Ex. B); Expert Witness Report of Durand Begault, Enhanced Audio (Knight Decl., Ex. D); Jacobsen Dep. at 75:15-76:1 (Knight Decl., Ex. B) | 19. |
| 20.     The broadcast occurred at 12:42 a.m. and 34 seconds.<br><br>Computer Aided Dispatch Report (Brown Decl., Ex. A) | 20. |
| 21.     The kitchen door subsequently swung shut.<br><br>Jacobsen Dep. at 25:11-13 (Knight Decl., Ex. | 21. |

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| B) | |
| 22. Darcel Lewis told police that Angel Ramos was in the kitchen with a knife in his hand and that he grabbed Angel and threw it in the sink.<br><br>Statement of Darcel Lewis at 12:50-14:45 (Bates Decl., Ex. D); Police Report Supplement 24, p. 2 (Brown Decl., Ex. B) | 22. |
| 23. Minor G.W. was interviewed following the incident and stated that Angel Ramos had been punching the cabinet while DJ was in the kitchen trying to calm him down. Ramos grabbed a knife with a red handle from the kitchen drawer and tried to make his way out the kitchen door to the balcony. Ramos at one point held the knife at shoulder level, while DJ tried to prevent him from going outside with the knife. G.W. stated that Angel Ramos had made his way onto the deck when he heard gunshots.<br><br>Certified Transcript of G.W. Interview at 26:12-27:6, 29:14-30:4, 36:20-37:11, 39:9-41:1 (Knight Decl., Ex. E); Police Report, Supplement 12 p. 1 (Brown Decl., Ex. B) | 23. |
| 24. Officer Samida and Officer Jacobsen were still on the ground level looking up at the second story balcony.<br><br>Jacobsen Dep. at 26:23-27:6 (Knight Decl., Ex. B) | 24. |
| 25. Officer Samida was standing roughly 10 feet to Officer Jacobsen's right.<br><br>Samida Dep. at 45:9-46:9 (Knight Decl., Ex. C); Jacobsen Dep. at 65:20-25 (Knight Decl., Ex. B) | 25. |
| 26. Officer Samida saw DeShon instigating a fight with someone in the kitchen, yelling and taking a bladed stance with his fists raised to his chest.<br><br>Samida Dep. at 25:18-26:7 (Knight Decl., Ex. C) | 26. |

Case No. 2:17-cv-01619-TLN-AC      DEFENDANTS' SEPARATE STATEMENT IN SUPPORT OF MSJ

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 27. Because Officer Samida had already given multiple commands, which had been ignored, he fired his Taser at DeShon.<br><br>Samida Dep. at 26:10-27:3 (Knight Decl., Ex. C) | 27. |
| 28. Although it appeared that only one of the Taser barbs connected, DeShon fell to the balcony floor.<br><br>Samida Dep. at 29:4-30:4 (Knight Decl., Ex. C) | 28. |
| 29. Angel Ramos ran from the kitchen and got on top of DeShon Wilson.<br><br>Jacobsen Dep. at 79:2-9 (Knight Decl., Ex. B); Samida Dep. at 32:2-8 (Knight Decl., Ex. C) | 29. |
| 30. Angel Ramos came out onto the balcony and got on top of DeShon Wilson approximately 10 to 12 seconds after Officer Jacobsen saw the kitchen door close.<br><br>Jacobsen Dep. at 85:23-86:8 (Knight Decl., Ex. B) | 30. |
| 31. Officer Jacobsen saw Angel Ramos' hand clenched in a hammerfirst with the blade of a knife extending from him pinkie as Ramos quickly stabbed downward at DeShon.<br><br>Jacobsen Dep. at 78:25-80:8 (Knight Decl., Ex. B) | 31. |
| 32. Perceiving an immediate threat to DeShon Wilson's life, Officer Jacobsen fired four shots in quick succession at Angel Ramos, striking and killing him.<br><br>Jacobsen Dep. at 78:25-80:8 (Knight Decl., Ex. B) | 32. |
| 33. The first shot was fired just 14.5 seconds after Officer Samida discharged his Taser.<br><br>Officer Murphy Body Camera Footage (Bates Decl., Ex. C); Expert Witness Report of | 33. |

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Durand Begault at p.3 (Knight Decl., Ex. D) | |
| 34. Officer Jacobsen had an unobstructed view of Angel Ramos' upper torso, but was not able to see whether the knife was making contact with DeShon Wilson as the deck partially blocked his line of sight to DeShon. | 34. |
| Jacobsen Dep. at 89:23-91:15 (Knight Decl., Ex. B) | |
| 35. The blade in Angel Ramos' hand appeared to Officer Jacobsen to be shorter than the blade of the knife he was previously holding in the kitchen. | 35. |
| Jacobsen Dep. at 79:21-81:6 (Knight Decl., Ex. B) | |
| 36. Officer Jeremy Callinan was standing approximately 3-5 feet to the right of Officer Jacobsen at the time of the shooting. | 36. |
| Callinan Decl., ¶ 3. | |
| 37. Officer Callinan perceived that Angel Ramos posed an immediate threat to DeShon Wilson's life. | 37. |
| Callinan Decl., ¶ 4. | |
| 38. Officer Callinan heard Officer Samida's Taser deploy as he approached the house. | 38. |
| Callinan Decl., ¶ 2. | |
| 39. As he looked up at the balcony, Officer Callinan saw Angel Ramos jump on top of DeShon Wilson and stab downward while DeShon Wilson screamed. | 39. |
| Callinan Decl., ¶ 2. | |
| 40. Officer Callinan did not see the blade in Angel Ramos' hand. | 40. |
| Callinan Decl., ¶ 2. | |
| 41. Officer Callinan believed that Angel Ramos had a knife in his hand and was | 41. |

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| stabbing DeShon Wilson. | |
| Callinan Decl., ¶ 2. | |
| 42. Officer Callinan saw that Angel Ramos had his hand clenched in a hammer fist and was making quick downward stabbing motions. | 42. |
| Callinan Decl., ¶ 2. | |
| 43. Officer Callinan perceived the motion to be distinct from a punching motion, which tends to have more momentum. | 43. |
| Callinan Decl., ¶ 2. | |
| 44. Officer Callinan had a Taser in his hand when Ramos got on top of Wilson. | 44. |
| Callinan Decl., ¶ 3. | |
| 45. Officer Callinan was in the process of putting his Taser away and pulling out a handgun to shoot when he saw Officer Jacobsen fire. | 45. |
| Callinan Decl., ¶ 3. | |
| 46. Had Officer Jacobsen not fired his weapon, Officer Callinan would have pulled out his own firearm and shot Ramos based on his perception of an immediate threat to DeShon Wilson's life. | 46. |
| Callinan Decl., ¶ 4. | |
| 47. Officer Samida saw Angel Ramos get on top of DeShon Wilson and make a downward striking motion toward DeShon. | 47. |
| Samida Dep. at 32:2-16 (Knight Decl., Ex. C) | |
| 48. Officer Samida could not see Angel Ramos' right hand. | 48. |
| Samida Dep. at 36:7-9 (Knight Decl., Ex. C) | |
| 49. Officer Samida was in the process of changing Taser cartridges when Officer Jacobsen fired. | 49. |

| **Moving Party's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Samida Dep. at 32:17-22 (Knight Decl., Ex. C) | |
| 50.   Audio of the incident was captured on Officer Murphy's body camera. | 50. |
| Officer Murphy Body Camera Footage (Bates Decl., Ex. C); Expert Witness Report of Durand Begault, Enhanced Audio (Knight Decl., Ex. D) | |
| 51.   Following the incident, a large chef's knife was found in the kitchen sink. | 51. |
| Scene Photographs (Brown Decl., Ex. D); Callinan Decl., ¶ 5. | |
| 52.   Following the incident, a steak knife was found on the kitchen floor. | 52. |
| Scene Photographs (Brown Decl., Ex. D); Callinan Decl., ¶ 5. | |
| 53.   Angel Ramos' DNA was found on both the chef's knife and the steak knife. | 53. |
| San Mateo Forensic Laboratory Report (Brown Decl., Ex. C) | |
| 54.   DeShon Wilson testified that Angel Ramos was punching him with both fists and that he never saw a knife in Angel Ramos' hand. | 54. |
| Wilson Dep. at 47:5-11, 48:15-20 (Knight Decl., Ex. F) | |
| 55.   On August 3, 2017, Annice Evans and seven other family members filed the present action against the City of Vallejo and Officer Jacobsen asserting wrongful death and survivorship causes of action. | 55. |
| Complaint (Knight Decl., Ex. G) | |
| 56.   The Complaint was amended on September 13, 2018. | 56. |
| First Amended Complaint (Knight Decl., Ex. A. | |

| **Moving Party's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 57. Plaintiffs DeShon Wilson, Alicia Saddler, G.W., Dante Ramos, Darcel Lewis, Leann Sanchez, and Phillip Wilson dismissed their claims.<br><br>Knight Decl., ¶ 9. | 57. |
| 58. The operative complaint asserts causes of action for violation of Angel Ramos' rights under the Fourth Amendment, violation of Annice Evans' familial rights under the Fourteenth Amendment, wrongful death under California Code of Civil Procedure §§ 377.60 and 377.6, and violation of the Unruh Civil Rights Act against Officer Jacobsen, and a *Monell* cause of action against the City of Vallejo.<br><br>First Amended Complaint (Knight Decl., Ex. A) | 58. |
| 59. The First Amended Complaint alleges the following in support of Plaintiff's *Monell* cause of action:<br><br>That high-ranking Vallejo Police Department officials knew or reasonably should have known about the repeated unconstitutional use of deadly force by Vallejo officers and that each of them "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations", bringing about the shooting of Angel Ramos. It further alleges that officials ratified and encouraged misconduct through a deliberate indifference, reckless and/or conscious disregard of the misconduct of Officer Jacobsen. The complaint further alleges that the City of Vallejo had notice of "Constitutional defects in their training of VPD police officers, including, but not limited to unlawfully using deadly force to make detentions and/or arrests", that the City failed to discipline, terminate, or refrain from hiring Officer Jacobsen, and that each of these actions demonstrated a deliberate indifference by high-ranking City officials<br><br>First Amended Complaint at ¶ 47-52 (Knight | 59. |

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Decl., Ex. A) | |
| 60.     Defendants issued written interrogatories requesting all fact supporting Plaintiff Annice Evans' third cause of action against the City of Vallejo under 42 U.S.C. § 1983 pursuant to *Monell*. | 60. |
| Annice Evans' Responses to Interrogatories (Knight Decl., Ex. H.) | |
| 61.     Plaintiff identified the following "facts" supporting her *Monell* claim against the City of Vallejo: | 61. |
| "Notwithstanding the foregoing objections, Vallejo Police Department Officers have shot and killed multiple unarmed individuals in the years preceding this incident and subsequently. Further, Vallejo Police Officers have falsified police reports; failed to document uses of force; and have engaged in racial profiling against multiple African American and Latino citizens. None of the involved officers in any of these incidents have been disciplined or terminated for their unconstitutional actions, despite the City paying out millions of dollars in settlements, which cannot be justified by claims of fiscal efficiency." | |
| Annice Evans' Response to Interrogatory No. 14 (Knight Decl., Ex. H.) | |
| 62.     Plaintiff alleges that she is the biological mother of Angel Ramos, that his father is deceased, and that he died intestate without children. | 62. |
| First Amended Complaint, ¶ 7 (Knight Decl., Ex. A) | |

//

//

//

//

| Moving Party's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 63. Plaintiff did not file an affidavit in compliance with California Code of Civil Procedure § 377.32 prior to commencement of this action.<br><br>*See* Docket; Knight Decl., ¶ 11. | 63. |

DATED:  May 2, 2019               Respectfully submitted,


　　　　　　　　　　　　　　　　　  __/s/ Katelyn M. Knight_____
                                  KATELYN M. KNIGHT
                                  Deputy City Attorney
                                  Attorney for Defendants CITY OF VALLEJO and ZACH JACOBSEN