**JOHN L. BURRIS, Esq. SBN 69888**
**BEN NISENBAUM, Esq. SBN 222173**
**MELISSA C. NOLD, Esq. SBN 301378**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:   (510) 839-3882
john.burris@johnburrislaw.com
bnisenbaum@gmail.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANNICE EVANS, individually and as Successor in Interest to Decedent ANGEL RAMOS; and D.W., by and through his Guardian Ad Litem, CARITA WILSON, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF VALLEJO; a municipal corporation; ZACK JACOBSEN, Police Officer for the City of Vallejo; and DOES 1-50, individually and in their official capacities as Police Officers for the City of Vallejo, inclusive. <br><br> Defendants. | CASE NO.:  2:17-cv-01619-TLN-AC <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Date:  May 30, 2019 <br> Time:  2:00 p.m. <br> Ctrm:  2 |

# TABLE OF CONTENTS

Table of Contents.................................................................................................................ii

Table of Authorities............................................................................................................iii

Introduction.......................................................................................................................... 1

Statement of Facts................................................................................................................ 1

A. The Subject Incident According the DeShon Wilson .................................................... 1

B. Internal Inconsistencies in the Accounts of the Subject Incident Amongst Defendant City Police

Officers ................................................................................................................................ 2

C. Important Factual Dispute ............................................................................................... 3

D. Police Practice Experts' Opinions of the Subject Incident ........................................... 4

E. Defendants' Purported Undisputed Evidence ................................................................ 4

Argument ............................................................................................................................. 5

A. Legal Standards on Summary Judgment........................................................................ 5

B. Defendant Jacobsen Unreasonably Used Excessive Force on Decedent ...................... 6

1. Objective Reasonableness and Qualified Immunity Legal Standards ........................... 6

2. Objective Reasonableness Analysis.............................................................................. 7

3. Qualified Immunity Analysis......................................................................................11

C. Defendant Jacobsen's Conduct Shocks the Conscience in Violation of the 14th Amendment ..12

D. Material Questions of Fact Preclude Summary Judgment on Plaintiff's *Monell* Claims ...........13

E. Material Questions of Fact Preclude Summary Judgment on Plaintiff's State Law Claims.......14

1. Battery..........................................................................................................................14

2. Negligence ...................................................................................................................14

3. Bane Act.......................................................................................................................17

Conclusion ........................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016)..........................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................5

*Barnes v. City of Pasadena*, 508 Fed.Appx. 663 (9th Cir. 2013) ....................................12

*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002)........................................................15

*Block v. City of L.A.*, 253 F.3d 410 (9th Cir. 2001) .......................................................5

*Boyd v. Benton Cty.*, 374 F.3d 773 (9th Cir. 2004)........................................................13

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009).......................................................15

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ...................................16

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ...........................................................14

*Colvin v. U.S.*, 479 F.2d 998 (9th Cir. 1973) ...............................................................4

*Conn v. City of Reno,* 591 F.3d 1081 (9th Cir. 2010) ....................................................17

*Cornell v. City and Cty. of San Francisco*, 17 Cal.App.5th 766 (2017)...........................16

*Cotta v. County of Kings*, 79 F.Supp.3d 1148 (E.D. Cal., 2015) ....................................17

*Cruz v. City of Anaheim*, 765 F3d 1076 (9th Cir. 2014).............................................9, 10

*Edson v City of Anaheim*, 63 Cal,App.4th 1269 (1998).................................................14

*Franklin v. Foxworth*, 31 F.3d 873 (9th Cir. 1994) .......................................................7

*Freeman v. Arpaio*, 125 F.3d 723 (9th Cir. 1997) .........................................................6

*Gilmore v. Superior Court*, 230 Cal.App.3d 416 (1991) ...............................................15

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................................................6

*Grudt v. City of Los Angeles*, 2 Cal.3d 575 (1970)........................................................15

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997).......................................................11

*Hayes v. Cnty of San Diego (Hayes)*, 57 Cal.4th 622, 632 (2013) ..................................15

*Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016) ...........................................................11

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ..........................................6

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996).............................................................5

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)................................................................9, 12

1   *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ..................................................13

2   *Long v. Cnty of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ...........................................13

3   *Louis v. Praprotnik*, 485 U.S. 112 (1988)............................................................................14

4   *Mackinney v. Nielsen*, 69 F.3d 1002 (9th Cir. 1995) ........................................................13

5   *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003) .........................................................12

6   *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................5

7   *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011)...............................................................8

8   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................................................13

9   *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) ...................17

10  *Munoz v. Olin*, 24 Cal.3d 629 (1979)..................................................................................15

11  *Nehad v. Zimmerman*, 2017 WL 6453475 (2017) .............................................................10

12  *Nelson v. City of Davis*, 709 F.Supp.2d 978 (2010) .........................................................14

13  *Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016)..........................................6

14  *Orr v. Bank of America,* 285 F.3d 764 (9th Cir. 2002).......................................................5

15  *Pearson v. Callahan*, 555 U.S. 223 (2009)..........................................................................7

16  *Perez v. Jacobo*, 57 Fed.Appx. 296 (9th Cir. 2003) .........................................................11

17  *Petersen on behalf of L.P v. Lewis Cty.*, 697 Fed.Appx. 490 (9th Cir. 2017) ...................10

18  *Plumhoff v. Rickard*, 134 S.Ct 2012 (2014).....................................................................7, 9

19  *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) .............................................................12

20  *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256 (2006) ........................................15

21  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)..........................................16

22  *Tatum v. City & Cnty. of San Francisco,* 441 F.3d 1090 (9th Cir.2006)...........................17

23  *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993) ............................................................16

24  *Venegas v. Cnty of Los Angeles*, 153 Cal. App. 4th 1230 (2007) .....................................16

25  *Villarreal v. Cooper*, 929 F.Supp.2d 1063 (2013)............................................................14

26  *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ..........................................................12

27  *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017)..............................................................................7

28

**Statutes**

28 U.S.C. § 1732 ...............................................................................................................4

42 U.S.C. § 1983 ...............................................................................................................7

Cal. Civil Code § 52.1 .....................................................................................................16

Cal.Code Civ. Proc. § 377.20 .........................................................................................17

Cal.Code Civ. Proc. §377.32 ..........................................................................................17

Cal. Code Civ. Proc. § 377.60 ........................................................................................15

Federal Rule of Civil Procedure 56(a) .............................................................................5

# INTRODUCTION

Plaintiff, Annice Evans, brought this action arising from the unlawful shooting of her son, Angel Ramos, by Defendant City of Vallejo police officer Zach Jacobsen. Mr. Ramos was engaged in a mutual fist fight on the second-floor balcony of his home with DeShon Wilson. Responding to 911 calls describing what sounded like a brawl involving men and women at Ramos's home, other Defendant City police officers attempted to break up the fracas by using their Tasers on seeming aggressors. Having first observed Ramos grasping a large kitchen knife inside the house, Defendant Jacobsen then claimed to have observed Ramos armed with a knife and stabbing a victim "Psycho style" (i.e. clenched in his fist with the blade protruding past his pinky finger and quick striking downward). Defendant Jacobsen shot up at Ramos four times from the ground level, killing him instantly. There was no knife found near Ramos or on the balcony whatsoever, and the victim, DeShon Wilson suffered no stab wounds. Furthermore, two other percipient officers that witnessed the moments before Ramos was shot did not see any knife in Ramos' hand.

Plaintiffs maintain that Defendant Jacobsen unreasonably used deadly force on Angel Ramos who did not pose a threat of imminent deadly harm to others and material fact questions preclude summary judgment in any event.

Plaintiffs' Opposition to Defendant's Motion for Summary Judgment is based on the argument made below, on the Declarations of Benjamin Nisenbaum (hereinafter Nisenbaum Declaration) and of Melissa Nold (hereinafter Nold Declaration), filed herewith and all exhibits attached thereto, on the court's file in this matter and on any such oral and/or documentary evidence presented at the hearing on this motion.

# STATEMENT OF FACTS

## A. The Subject Incident According the DeShon Wilson

On January 23, 2017, DeShon Wilson was at a gathering at Plaintiff Annice Evans' home, with the regular inhabitants of the home, where all of the adults present were drinking alcohol. (See Deposition Transcript of DeShon Wilson at 15:22-17:23, attached as Exhibit A to the Nisenbaum Declaration, hereinafter "Wilson Depo.") Wilson was playing a videogame when a fight broke out in the living and spilled out onto the balcony off the kitchen. (Wilson Depo 22:11-24:16.) Wilson's

uncle, Phillip Wilson, was in the fight and called Wilson for help. (Wilson Depo 23:1-20.) Wilson observed Phillip Wilson and Dante Ramos appeared as though they were going to fight. (Wilson Depo 24:17-26:21.) Wilson entered the balcony to assist Phillip. (Wilson Depo 26:25-27:25.) Meanwhile, someone called to Angel Ramos to assist Dante. (Wilson Depo 30:9-25.) Wilson observed Dante, who was still in the kitchen, grab a knife and continue to yell at Wilson and gesture with the knife thru the kitchen window. (Wilson Depo 34:16-35:1, 36:9-38:25.) Wilson yelled at Dante through the window, then he punched the window and broke it, and waited to see what would happen. (Wilson Depo 39:8-25.) As Wilson waited there, he was suddenly tased, the Taser barb hit him on the right side to his rib cage. (Wilson Depo 42:11-44:1.) Wilson was not aware that the police were on the scene, and he did not hear any commands from the police prior to being tased. (Wilson Depo 44:2-14.)

Wilson was shocked and fell to the ground. (Wilson Depo 44:25-46:13.) When Wilson fell to the ground, Dante and Angel rushed out to the balcony. (Wilson Depo 46:24-47:4.) Angel leaned over Wilson and started punching him with both of his fists. (Wilson Depo 47:5-18.) Wilson testified that at this point "it was a fight between me and Angel" and that he was fighting back but none of his strikes were connecting (presumably due to the effects of being tased). (Wilson Depo 47:5-18, 51:7-24.)  Then Wilson heard the sound of a muffled shot, Angel fell on top of him and police officers came rushing up the stairs. (Wilson Depo 48:1-14)

**B. Internal Inconsistencies in the Accounts of the Subject Incident Amongst Defendant City Police Officers**

Defendant Jacobsen testified that he observed Angel Ramos inside the kitchen with a large kitchen knife (handle in his hand and blade extending out away from his pinky finger, elbow at a 90 degree angle and fist at ear level—hence, "Psycho Style") and he was being held back by someone. (See Deposition Testimony of Zach Jacobsen at 21:1-23:21, attached to the Nisenbaum Declaration as Exhibit B.) However, during his Officer Involved Shooting Interview (OIS), Jacobsen described the interior knife-wielding suspect to be an average height black male who was shirtless and wearing blue jeans and that this same person came out of the kitchen still armed with a knife in the same manner, leaned over Wilson and made a couple downward stabbing motions with the knife. (See

Police Report at Document 38-3 pp. 40-41 of 117.) Indeed, Angel Ramos is obviously a fair-skinned Hispanic male, tall and was wearing light-colored boxer shorts and nothing else. (See Crime Scene Supplement to Police Report, Document 38-3 at pp. 48; See Still Image from AXON 2017-01-23-0042 at 10:14, attached to Nisenbaum Declaration as Exhibit C.) In his videoed police interview, Officer Samida described Ramos's motion to be classic-rearing-back-knuckle-strikes. (See Samida Video Interview at 11:30-11:55, attached to the Nisenbaum Declaration as Exhibit D.) Moreover, Officer Samida testified that he observed Ramos punch Wilson in the face with his right hand. (See Deposition Testimony of Matthew Samida at p. 32:2-16, attached to the Nisenbaum Declaration as Exhibit E.) Angel Ramos obtained injuries on his right hand consistent with punching a person in the face consistent with Officer Samida's video recorded testimony. (See Autopsy photos 25, attached to Nisenbaum Declaration as Exhibit F.) Officer Callinan avers that he did not observe that Ramos was armed with a knife but believed Ramos was stabbing Wilson based on the motions he made with his arms. (Document 38-4, Callinan Declaration at ¶ 2.) However, Officer Callinan's statement is belied by the fact that he observed Ramos make this stabbing motion repeatedly before he determined to do anything about it. (*Id*. at ¶¶ 3-4.) Moreover, Defendant Jacobsen testified that the balcony was well illuminated, and he was able to clearly what was occurring on there. (Jacobsen Depo 53:1-20.) Whereas, Officer Samida testified that the balcony was lit by a basic lightbulb, that the scene was dim, that his view was obstructed by a tree, there were separated from the balcony by a fence and yard, and that it was difficult to see what was occurring on the balcony between the wooden slats of the railing. (Samida Depo 20:25-26:7)

**C. Important Factual Disputes**

      Wilson testified that he observed Angel Ramos through the kitchen window before he came onto the balcony and he did not have a knife in his hand. (Wilson Depo 41:5-10.) Importantly, Wilson testified that Angel Ramos did not have a knife in his hands when he was on top of him and that he did not see Ramos with a knife in his hands at any point. (Wilson Depo 40, 47:1-49:1.) The fire department emergency responders did not see a knife on the balcony immediately after the fracas and the crime scene analysts did not find a knife on the balcony or on the ground underneath the balcony but did find a cell phone near Ramos's head. (See Crime Scene Supplement to Police Report

at Document 38-3 at pp. 46-47; See Audio recording of Firefighter Goodrum at 2:35-2:55, attached to Nisenbaum Declaration as Exhibit G; See Audio recording of Firefighter Clay at 1-1:20, attached to Nisenbaum Declaration as Exhibit H) All knives were recovered inside the kitchen. (*Id.*) Wilson did not suffer stab wounds to his midsection, as Defendant Jacobsen purports to have seen him being stabbed. (Wilson Depo 52:3-25.) And minutes after the police break up the fracas, Wilson is seen with a bloodied nose, presumably from punches to his face, as described by Officer Samida. (See Still Photo from Officer Body Cam Video, attached to the Nisenbaum Declaration as Exhibit I.)

**D. Police Practice Experts' Opinions of the Subject Incident**

Plaintiff's Police Practices Expert, Roger Clark, opined that Defendant Jacobsen's decision to shoot Angel Ramos was based on subjective fear rather than objective fact. (See Roger Clark Rule 26 at p. 10, attached to the Nisenbaum Declaration as Exhibit J.) Clark also opined that Defendant Jacobsen was required to be certain that Ramos had a weapon in his hand and not simply imagine that one existed based on Ramos's arguable gestures. (*Id.*) Defendants' Police Practices Expert, Jared Zwickey, agreed that police officers are not permitted to use deadly force to break up a fist fight. (See Deposition Testimony of Jared Zwickey at 36:1-37:11, attached to the Nisenbaum Declaration as Exhibit K.) Zwickey also testified that whether Defendant Jacobsen actually saw a knife in Ramos's hand when compared to Officers Samida and Callinan's testimony that they did not see a knife in Ramos's hand creates a credibility question and a dispute of fact determination. (Zwickey Depo at 33:2-35:18.)

**E. Defendants' Purported Undisputed Evidence**

There were several percipient witnesses to various aspects of the subject incident that provided statements to the police and these statements were gathered as a part of the police report and investigation into the incident; however, these witnesses have not provided sworn statements and have not been deposed. (Nold Declaration ¶ 2-3.) As such, statements from these witnesses are inadmissible hearsay. Hearsay contained in a police report is inadmissible under 28 U.S.C. § 1732. *Colvin v. U.S.*, 479 F.2d 998, 1003 (9th Cir. 1973). Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay, and inadmissible under the common law exception to the hearsay rule or under [28

U.S.C. § 1732].” *Id.* Defendants attempt to rely on the hearsay statements of Darcel Lewis and Minor G.W. in their Statement of Undisputed Facts in an attempt to corroborate Defendant Jacobsen's testimony that Angel Ramos was armed with a knife inside the kitchen and that someone was preventing him from going outside with the knife. (Document 38-5, ¶¶ 22 and 23.) Defendants are offering these statements for their truth which is clearly inadmissible hearsay.

Moreover, the parties entered into a stipulation, whereby Plaintiffs averred that they would not call the witnesses who have only provided unsworn police statements as witnesses at trial. (Nold Declaration ¶ 4-5, Exhibit 1 and 2.) So both the form and content of this evidence is not admissible. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001); *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (holding a trial court can only consider admissible evidence in ruling on a motion for summary judgment).

## ARGUMENT

### A. Legal Standard on Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that “[a] party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought.” It further provides that “[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). Material facts are those that may affect the outcome of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (“Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.”). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate “specific facts showing there is a genuine issue for trial.” *Id*. (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must “identify with reasonable particularity the evidence that precludes summary judgment.” *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See *Anderson*, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

Here, Defendants move for summary judgment by asking this Court to ignore eyewitness testimony that contradicts Defendant Jacobsen's version of the facts, make witness credibility determinations, and otherwise decide material fact disputes on the central issues of this litigation.

**B. Defendant Jacobsen Unreasonably Used Excessive Force on Decedent**

Defendants contend that Defendant Jacobsen's use of deadly force was objectively reasonable, and that he is entitled to qualified immunity in any event. Plaintiff maintains that material fact questions preclude summary judgment on whether the officer's actions were objectively reasonable and viewing the facts in the light most favorable to Plaintiff, it has been clearly established that his uses of force under these circumstances amounted to constitutional violations.

*1. Objective Reasonableness and Qualified Immunity Legal Standards*

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" which "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). This analysis involves three steps: 1) assess the severity of the intrusion by evaluating the type and amount of force inflicted; 2) evaluate the government's interest in the use of force, and 3) balance the gravity of the intrusion on the individual against the government's need for that intrusion. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).

The strength of the government's interest in the force used is evaluated by examining three primary factors: (1) whether the suspect poses an immediate threat to the safety of the officers or others, (2) the severity of the crime at issue, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. These factors, however, are not exclusive. This Court directs trial courts to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan v. MacPherson*, 630 F.3d at 826 (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to the officer that the person was emotionally disturbed. See, e.g., *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

However, public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S.Ct 2012, 2023 (2014). To determine whether a government official is entitled to qualified immunity, this Court must determine whether: (1) the facts that a plaintiff has alleged or proved show a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Supreme Court recently confirmed the true contours of finding a "clearly established" constitutional violation:

> By its plain terms, the [Fourth] Amendment forbids unreasonable searches and seizures, yet it may be difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered. For this reason, '[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.' It is not necessary, of course, that 'the very action in question has previously been held unlawful.' That is, an officer might lose qualified immunity even if there is no reported case 'directly on point.' But 'in the light of pre-existing law,' the unlawfulness of the officer's conduct 'must be apparent.'

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866-67 (2017) (emphasis original; internal citations omitted). The *Ziglar* Court reiterated that "qualified immunity protects 'all but the plainly incompetent or those

who knowingly violate the law." *Id*. at 1867. And "[t]o determine whether a given officer falls into either of those two categories, a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Id*. (citation omitted).

*2. Objective Reasonableness Analysis*

Angel Ramos's shooting death resulted from Defendant Jacobsen's use of deadly force. Clearly, the severity of this intrusion on his Fourth Amendment interests was "extreme" and "unmatched." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016).

"[C]areful attention" must be paid to the "facts and circumstances of each particular case," including the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The most important factor "whether the suspect poses an immediate threat to the safety of the officer or others" is the central factor at issue here. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). Plaintiff maintains that material fact questions preclude determination of this factor on summary judgment:

- Based on the varying witness testimony, it is unclear who Defendant Jacobsen observed with a knife in the kitchen. Defendant Jacobsen testified that he observed a black man wearing blue jeans and wielding a knife "psycho style" in the kitchen and then observed that same man exit the kitchen and step on to the balcony still wielding the knife in the same manner. First of all, Angel Ramos was a fair-skinned Hispanic male wearing only boxer shorts. None of the other witnesses (who provided sworn testimony while they were sober) ever observed Angel Ramos with a knife in his hands. Wilson testified that he observed Dante Ramos, who was wearing blue jeans, with a knife while he was in the kitchen; however, Dante did not come out on the balcony. Phillip Wilson is a black man and he was shirtless, wearing blue jeans and was out on the balcony; however, Defendant Jacobsen did not shoot him.
- Direct testimonial evidence refutes Defendant Jacobsen's claim that Angel Ramos was armed with a knife on the balcony. Officers Callinan and Samida did not see a knife in Ramos's hand. Wilson testified that Ramos did not have a knife in his hand when he was on the

balcony. Wilson did not suffer stab wounds (at most he suffered a laceration from glass). And the first responders to the scene did not find any knives on the balcony and the crime scene analysts never found a knife underneath the balcony.) Although things that officers are not then aware of at the time of the incident are not relevant, there are circumstances when evidence found out afterwards can implicate credibility. *Cruz v. City of Anaheim*, 765 F3d 1076, 1079 fn. 3 (9th Cir. 2014) (emphasis original) (opining officers' claim that the suspect reached for a gun causing them to shoot and kill the suspect is called into question by the fact that the suspect was unarmed…"[b]ut for him to make such a gesture [i.e., reach for his waistband] when *no* gun is there makes no sense whatsoever."). Here, Angel Ramos was not armed with a knife so Defendant Jacobsen's claims that he saw a knife are undermined.

- When viewed in the light favorable to Plaintiff, the evidence reveals that Angel Ramos was not even making a life-threatening gesture at the time Defendant Jacobsen shot him. Defendant Jacobsen testified that Ramos was on top of Wilson making short quick "psycho style" stabbing motions. Officer Callinan also describes short quick stabbing motions but his claim is belied by the fact that he watched Ramos purportedly stab Wilson three times before determining to do something about it. Based on Callinan's inaction, a reasonable jury can determine that Callinan did not shoot because Ramos was not armed and this was not a deadly force-worthy situation, Similarly, Officer Samida physically reenacts Ramos's motions and he demonstrates classic-rearing-back-power "strikes" with the knuckles of his hands. Indeed, autopsy photos of Ramos's hands indicate he used his knuckles for punching. Officer Samida also testified that he endeavored to change his Taser cartridges so that he could deploy his Taser on Ramos at the time of the shooting. That two other officers on the scene, observing the same interaction as Defendant Jacobsen did not use deadly force reveals how unreasonable Jacobsen's conduct was. See e.g., *Kisela v. Hughes*, 138 S.Ct. 1148, 1157–58 (2018) (Sotomayor dissent) ("That two officers on the scene, presented with the same circumstances as Kisela, did not use deadly force reveals just how unnecessary and unreasonable it was for Kisela to fire four shots at Hughes) (quoting *Plumhoff v. Rickard,* 134

S.Ct. at 2020 ("We analyze [the objective reasonableness] question from the perspective of a reasonable officer on the scene" (internal quotation marks omitted)).)

- Viewing the evidence in the light favorable to Plaintiff, DeShon Wilson and Angel Ramos were engaged in a fist fight. Again, Officer Samida testified that he observed Ramos punch Wilson in the face. Wilson testified that he and Ramos were fighting and punching each other at the time Ramos was shot. And Wilson is seen bleeding from his nose immediately after the fracas.

It is undisputed amongst the parties and their police practices experts that it is unreasonable to use deadly force to break up a fist fight. Defendants' citation to *Nehad v. Zimmerman*, 2017 WL 6453475 (2017) is misplaced. First of all, it is an unpublished case, is not precedent and it is currently on appeal. However, it is also factually distinguished because there the suspect actually had a metallic pen in his hand. *Nehad*, 2017 WL 6453475 at *3. The mistake of fact in *Nehad* is that the suspect was armed with a knife; whereas, he was only armed with a pen. But objective undisputed facts supported the officer's perception that Nehad was armed with a knife and posed and immediate threat to his safety. *Nehad* at *5. Here, Ramos was engaged in mutual fist to cuffs and was completely unarmed and many material facts belie Defendant Jacobsen's mistaken perception. Defendants' citation to *Petersen on behalf of L.P v. Lewis Cty.*, 697 Fed.Appx. 490 (9th Cir. 2017) another unpublished non-precedential case, is also misplaced. There the officer responded to calls that the suspect was armed with a knife and the suspect kept his left hand in his sweatshirt pocket as he advanced on the officer in defiance of the officer's orders to stop and show his hands. *Id*. at p. 491. The officer shot and killed the suspect who turned out to not be armed. The mistake in fact was that the suspect was not armed but the officer certainly did not have to wait to see the glint of steel before defending himself against an advancing suspect refusing to reveal that he was unarmed. Again, that situation is distinguished from here, where the officer saw a black man with a knife inside the house while the kitchen door was open, and then shot a Hispanic man that was completely unarmed that emerged from that same door and was not concealing the fact that he was unarmed.

The central question, here, is much more analogous to the question distilled by the Ninth Circuit in *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014): "To decide this case a jury

would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't." In *Cruz*, the Ninth Circuit cautioned against relying on the officers' self-serving testimony that Cruz had reached for his waistband. *Cruz*, 765 F.3d at 1079. "[I]ndeed, the only evidence that suggests this is what happened—is the testimony of the officers, four of whom say they saw Cruz make the fateful reach. But in the deadly force context, we cannot 'simply accept what may be a self-serving account by the police officer.' [citation omitted]…. '[t]he judge must carefully examine all the evidence in the record...to determine whether the officer's story is internally consistent and consistent with other known facts.' [citation omitted]. This includes 'circumstantial evidence that, if believed, would tend to discredit the police officer's story.' [Citation omitted.]" *Id*. Similarly here, if Angel Ramos was armed with a knife and in the process of stabbing DeShon Wilson repeatedly, then deadly force would have been justified. However, the only evidence of that is Defendant Jacobsen's self-serving testimony. All of the other direct testimonial and circumstantial evidence indicates that Angel Ramos and DeShon Wilson were engaged in mutual fist to cuffs not warranting the use of deadly force. Material fact questions preclude summary judgment on whether Defendant Jacobsen's use of deadly force was unreasonable.

### 3. Qualified Immunity Analysis

("[A]t summary judgment, an officer may be denied qualified immunity in a Section 1983 action 'only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation.'") *Hughes v. Kisela*, 862 F.3d 775, 783 (9th Cir. 2016). Plaintiff has already established that

It is axiomatic that officers are not entitled to qualified immunity in cases where decedents did not have weapons on their persons, brandish weapons, or threaten to use them - even if the officers believed the decedents were armed. *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) (shooting the plaintiff was not objectively reasonable where there was no imminent threat to life). Moreover, the Ninth Circuit has expressly denied qualified immunity to officers that use deadly force

"to break up a mutual fist fight." *Perez v. Jacobo*, 57 Fed.Appx. 296, 298 (9th Cir. 2003) (also denying defendant officer's claim of reasonable mistake as to the necessity of the use of force). As such, it has long since been clearly established that using deadly force to break up a mutual fist fight is a constitutional violation for which Defendant Jacobsen is not entitled to qualified immunity.

The cases cited by Defendants are distinguished. In *Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003) a prison guard who was 360 feet from the melee shot an inmate he believed to be kicking another inmate in the head. Of course, here, Jacobsen stood 15 feet away and other officers who were virtually the same distance away did not observe Ramos armed with a knife. In *Barnes v. City of Pasadena*, 508 Fed.Appx. 663 (9th Cir. 2013) the suspect indisputably had something in his hands and there was no evidence suggesting that the officers did not believe, or should not have believed, the object to be a gun. *Kisela v. Hughes*, 138 S.Ct. at 1152-53, is similarly distinguished in that it is undisputed that Hughes had a knife and refused repeated commands to drop it. Here again, Angel Ramos had nothing in his hands at the time he was shot and the evidence overwhelmingly establishes that it was not reasonable for Defendant Jacobsen to have believed Angel was armed—neigh or suggests that Defendant Jacobsen's belief was fabricated.

Defendants' argument on this point must fail.

## C. Defendant Jacobsen's Conduct Shocks the Conscience in Violation of the Fourteenth Amendment

Defendants argue there is no evidence of conduct sufficient to establish a Fourteenth Amendment violation. Defendants are mistaken.

Plaintiff asserts Fourteenth Amendment substantive due process claims because she was deprived of her liberty interest in the companionship and society of Angel Ramos her son through official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Such a claim requires plaintiffs to prove that the officers' use of force 'shock[ed] the conscience.'" *Gonzalez*, 747 F.3d at 797 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). The primary legal question under this standard is whether it can be met by a showing of deliberate indifference, or whether the plaintiff must instead show a purpose to harm for reasons unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137. If the circumstances were such that actual deliberation was

practical, liability may attach from an officer's deliberate indifference. *Id*. at 1138. "Deliberation" for the purposes of the "shocks the conscience" test is not a literal concept and is not necessarily tied to the amount of time allowed for consideration before action. *Id*. at 1139.

Here, Defendant Jacobsen observed a black man holding a knife in the kitchen and based on that description indiscriminately shot Angel Ramos a Hispanic male when he emerged from the kitchen and engaged in a mutual fist fight with DeShon Wilson. Other police observed Ramos's conduct and stood very near to Jacobsen and took actions to use intermediate force. Defendant Jacobsen had the same opportunity to deliberate and determine that deadly force was not warranted. Defendant Jacobsen's conduct evinces a purpose to harm. Defendants' arguments to the contrary must fail.

**D. Material Fact Questions Preclude Summary Judgment on Plaintiff's *Monell* Claims**

The Supreme Court has held that "a municipality may only be sued under section 1983 if the action that is alleged to be unconstitutional implement [ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the city made a deliberate or conscious choice to fail to train its employees adequately." *Boyd v. Benton Cty.*, 374 F.3d 773, 784 (9th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *Mackinney v. Nielsen*, 69 F.3d 1002, 1010 (9th Cir. 1995)) (internal citations and quotation marks omitted). Defendants move for summary judgment on Plaintiffs' *Monell* claims arguing there is no facts that could give rise to *Monell* liability.

A municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). While Defendants are obviously fine with their track record, a jury may well find that multiple instances of shooting non-threatening suspects in the back, including unarmed suspects, is abhorrent and presents a grave danger to the citizenry. In addition, Defendant City's officers have a propensity to shoot toward residences that may be

occupied, in their misguided attempt to protect the residents from danger. In the process, these Defendants create actual harm and danger to abate the potential for harm. Defendants' solution is grievously worse than the problem.

Contrary to Defendants' argument, isolated constitutional violations may give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id*. at 1239. There is no evidence that Defendant City disciplined or retrained Defendant Jacobsen for his unwarranted shooting of Angel Ramos or for his reckless shooting from the ground floor into a second story balcony which is backed by a home he knew to be occupied with many people. *Villarreal v. Cooper*, 929 F.Supp.2d 1063, 1077 (2013) (denying summary judgment because issues of material fact remain opining "if a jury were to find that [the defendant officer]'s actions violated [the suspect]'s Fourth Amendment rights, the jury could conceivably accept [the of Chief of Police]'s statements [of affirmation of the defendant officer's conduct] as a ratification of any unconstitutional actions taken by [the defendant officer]."]

Defendants' argument on this point must fail.

**E. Material Fact Questions Preclude Summary Judgment of Plaintiff's State Law Claims**

Plaintiff's state law claims survive summary judgment for largely the same reasons as the constitutional claims.

*1. Battery*

Here again, Defendants assert that based on their version of the facts, that Defendant Jacobsen's actions were reasonable and thus do not amount to a violation of battery. Plaintiff has established that material questions of fact and credibility determinations preclude summary judgment on the issue of reasonableness in the constitutional context and these same material fact questions and credibility determinations likewise preclude summary judgment on Plaintiffs' tort claims. See *Nelson v. City of Davis*, 709 F.Supp.2d 978, 992 (2010) (citing *Edson v City of Anaheim*, 63 Cal,App.4th 1269, 1272 (1998)).

*2. Negligence*

Plaintiff asserts that she is entitled to recover damages resulting from the tortuous acts of Defendant Jacobsen which resulted in decedent's death, specifically wrongful death negligence. Plaintiff asserts direct liability against the Defendant Officer and against Defendant City under a theory of respondeat superior for wrongful death. See Cal.Civ.Proc. Code § 377.60 (providing the statutorily-created right of an heir to recover damages resulting from a tortious act which results in the decedent's death); *Gilmore v. Superior Court*, 230 Cal.App.3d 416, 420 (1991).

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1264 (2006). The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 587 (1970)). In this context, to prove the tort, a plaintiff must show that the officer violated his "duty to use reasonable force under the totality of the circumstances." See *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526, fn.10 (2009). Importantly, the California Supreme Court has reaffirmed long-standing precedent that where an officer's preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty of San Diego*, 57 Cal.4th 622, 632 (2013) (emphasis original).

The *Hayes* Court expressly distinguished California's wrongful death – negligence standard from that of the rule that applies to violations of the federal Constitution's Fourth Amendment which focuses "more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on preshooting conduct." *Hayes, supra*, 57 Cal.4th at 638 (internal citations omitted). "The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability." *Id*. citing, *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002).

Here again, Defendant Jacobsen acted based on subjective fear and not on any objective facts that he observed during the incident. Angel Ramos was unarmed and engaged in a mutual fist fight with DeShon Wilson—someone whom the Defendant City Officers observed and determined to be the aggressor. Defendant Jacobsen shot up into a crowded dimly lit balcony backed by an even more crowded house, where his view was obstructed by wooden slats and possibly a tree and fencing. A reasonable jury may well determine Defendants were negligent for this conduct.

### 3. Bane Act

The Tom Bane Civil Rights Act (Section 52.1) civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law where the interference is carried out "by threats, intimidation or coercion." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citing *Venegas v. Cnty of Los Angeles*, 153 Cal. App. 4th 1230, 1242 (2007)). Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. See *Venegas*, 153 Cal. App.4th at 1245.

The Ninth Circuit has held that "the elements of [an] excessive force claim under Civil Code § 52.1 are the same as under § 1983." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). However, while the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be "transactionally independent from the constitutional violation alleged ... the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese*, 888 F.3d at 1043-1044 (citing *Cornell v. City and Cty. of San Francisco*, 17 Cal.App.5th 766 (2017)). When applying the specific intent standard to an excessive force violation, "a mere intention to use force that the jury ultimately finds unreasonable—that is, general criminal intent is insufficient." *Reese*, 888 F.3d at 1045 (citing *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). "Rather the jury must find that the defendants 'intended not only to use the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id*.

Here, material fact questions preclude summary judgment on Plaintiffs' section 52.1 claim. Defendant Jacobsen shot Angel Ramos who was unarmed and engaged in a mutual fist fight with

DeShon Wilson—someone whom the Defendant City Officers observed and determined to be the aggressor. Defendant Jacobsen shot up into a crowded dimly lit balcony backed by an even more crowded house, where his view was obstructed by wooden slats and possibly a tree and fencing. Under these circumstances, a jury can easily determine that Defendant Morris acted with the specific intent to violate decedent's constitutional rights.

Defendants' argument on this point must fail.

**F. Plaintiff Evans has Standing to Bring Survival Action Claims on Angel Ramos's Behalf**

Under § 1983, a decedent's survivors may bring a claim for the violation of their substantive constitutional rights or those of the decedent. *Conn v. City of Reno,* 591 F.3d 1081, 1096 (9th Cir. 2010). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (citation omitted). Under California law, "a cause of action for ... a person is not lost by reason of the person's death, but survives." Cal.Code Civ. Proc. § 377.20(a). "[W]here there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action." *Tatum v. City & Cnty. of San Francisco,* 441 F.3d 1090, 1093 n. 2 (9th Cir.2006) (citing Cal.Code Civ. Proc. §§ 377.20, 377.32).

Defendants argue that Plaintiff Evans has not satisfied procedural requirements to be successor-in-interest and thereby lacks standing to bring Fourth Amendment claims on Angel Ramos's behalf. A successor in interest who "seeks to commence an action or proceeding" on behalf of a decedent "shall execute and file an affidavit" that conforms with the enumerated requirements of § 377.32(a). Plaintiff Evans has filed the requisite affidavit along with Angel Ramos's death certificate to this Court. (See Declaration of Melissa Nold ¶ 8 and Dkt. 41.) As such, Plaintiff has cured any prior deficiency and perfected her standing to bring claims on Angel Ramos's behalf. See e.g., *Cotta v. County of Kings*, 79 F.Supp.3d 1148, 1159-60 (E.D. Cal., 2015) (holding [r]egardless, Plaintiffs filed a certified copy of Decedent's death certificate along with their opposition to

Defendants' motion for summary judgment…Thus, Plaintiffs have cured the prior deficiencies of Mrs. Cotta's affidavit.).

## CONCLUSION

Based on the foregoing, this Court must deny Defendants' motion for summary judgment.


**Dated:  May 16, 2019**                          **THE LAW OFFICES OF JOHN L. BURRIS**


                                        */s/ Benjamin Nisenbaum*
                                        **JOHN L. BURRIS**
                                        **BEN NISENBAUM**
                                        **MELISSA C. NOLD**
                                        **Attorneys for Plaintiffs**